James E. BROWN

v.

The UNITED STATES.

No. 246–82C.

United States Claims Court.

July 14, 1983.

James E. Brown, pro se plaintiff.

Randall B. Weill, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## OPINION ON CROSS–MOTIONS OF THE PARTIES FOR SUMMARY JUDGMENT

REGINALD W. GIBSON, Judge:

This is a civilian pay case which comes before the court on the parties' cross-mo-

tions for summary judgment. On May 17, 1982, plaintiff, James E. Brown, filed a *pro se* petition consisting of nine counts, which was buttressed by a supplemental pleading filed on December 2, 1982, which added a tenth count. Plaintiff seeks reimbursement for and/or payment of travel, transportation, and relocation expenses including vacation leave, as well as compensatory damages, back pay, and reinstatement. All such alleged grounds arise out of a series of events that occurred subsequent to the commencement of his employment by the Department of the Army (Army) in 1971 and extend through 1981.

Additionally, plaintiff alleges that he was wrongfully "blacklisted" from applying and being considered for appointment to various higher grade positions for which he was qualified; inadequately compensated for work performed at a higher grade level than the position he actually held; and subjected to arbitrary and improper actions relating to an involuntary transfer from West Germany to Alexandria, Virginia, where, as of the filing of this action, he was currently employed. It is for these claims that plaintiff seeks damages and back pay.

Jurisdiction in this court is premised on the Tucker Act, 28 U.S.C. § 1491, with respect to all counts.[1]

As it will appear, and for the reasons delineated hereinafter, the court's rulings on each of the 10 counts in this cause are as follows:

(i) Counts I through V and VII through X, defendant's motion for summary judgment is granted, and plaintiff's related motion is denied.

(ii) Count VI, the cross-motions of the parties are denied.

1. The court observes that plaintiff has been engaged in numerous law suits with respect to alleged wrongful personnel actions visited upon him emanating from his civilian employment from 1971 to 1981 in West Germany and then in Alexandria, Virginia. These cases are as follows: *James E. Brown, et al. v. United States,* Ct.Cl. No. 490–76; *Werner, et al. v. United States,* 218 Ct.Cl. 746, 590 F.2d 344 (1978); *James E. Brown v. United States,* No. 79–230 (D.D.C. Oct. 27, 1981); *James E. Brown*

*v. United States,* Ct.Cl. No. 561–79C. In fact, in his initial petition in this action, filed on May 17, 1982, plaintiff admits that "§§ 5722–5728 issues were properly raised and briefed by the parties, but not decided by the court in *James E. Brown, et al. v. United States,* Ct.Cl. No. 490–76. This cause [*i.e.,* Ct.Cl. No. 246–82C] is an extension or continuation of that action...." To the extent that the foregoing cases are referred to, hereinafter the reference will be "Ct.Cl. No. _____," and "D.C. No. _____."

Inasmuch as it appears to the court that Count VI is not barred by either the statute of limitations or laches, and there also appears to be genuine issues of material fact, a trial on the merits is, therefore, required.

## FACTS

Plaintiff is a 10-point preference veteran civilian employee of the Army. On or about May 7, 1971, plaintiff was recruited as a GS–5 accounting technician by the Army in Frankfurt, West Germany.[2] Shortly thereafter, he was promoted by the Army to Administrative Assistant, GS–7, effective August 8, 1971, and was transferred to and relocated in Worms, West Germany.[3] Concomitant with the authorization for the foregoing transfer, plaintiff executed DD Form No. 1617, Transportation Agreement—Oversea Employee (hereinafter Transportation Agreement), which was dated August 5, 1971, and contained the representation that his "place of actual residence at [the] time of appointment [was] ... Lewisburg, Tennessee," and that the term of his tour of duty was "36 months." The foregoing Transportation Agreement delineated the circumstances, pursuant to 5 U.S.C. § 5722, under which the Army will provide travel and transportation expenses for plaintiff and his family back to his "place of actual residence" upon completion of the prescribed period of service, or earlier if he was required to return for reasons beyond his control.

Upon plaintiff's arrival in Worms, however, the Worms Area Civilian Personnel Office (WACPO) determined that he was not eligible for the benefits of a 36-month Transportation Agreement, because he was recruited for the GS–7 position in Frankfurt, Germany, and not in the United States. Plaintiff was advised that the 36-month Transportation Agreement was not efficacious and that he was entitled to, and thus was offered, only a 12-month Transportation Agreement. Consequently, plaintiff executed a 12-month Transportation Agreement dated August 9, 1971. The latter Transportation Agreement was identical in all respects to the 36-month Transportation Agreement, *including* the assertion that plaintiff's place of actual residence at the time of appointment was "Lewisburg, Tennessee," except for the signature date and the period of duty assigned was for 12 months rather than 36 months.[4]

Thereafter, on or about January 3, 1972, plaintiff was removed from his employment under the pretext (as plaintiff contends) of "correcting the petitioner's alleged unlawful appointment." Plaintiff states that the motivation for his firing, which was "for reasons beyond his control" is evidenced by the fact that his superiors attempted to "pressure" him into withdrawing his administrative challenge to their decision denying him "payment of his relocation and overseas allowances." Plaintiff adds that on or about September 28, 1971, defendant's agents warned him that "if he did not withdraw his complaint relative to the decision [denying the foregoing relief] he would be removed from Federal Service."

Because of this removal, plaintiff demanded that he either be returned to the

---

**2.** The record is devoid of evidence with respect to plaintiff's personal and employment history prior to 1963, when he married a German woman. Plaintiff worked in Frankfurt, Germany, for Raytheon Service Company from 1967 through 1970 when he resigned after a transfer to Korea. Presumably, he returned to Germany because the employment contract with Raytheon did not provide for payment of travel expenses to the United States. The record does not disclose the extent to which, or whether, plaintiff was employed during the period between his resignation from Raytheon in October 1970 and his employment by the Army in May 1971.

**3.** It is indicated that geographically Worms is approximately 40 miles from Frankfurt.

**4.** Plaintiff then filed a grievance protesting the withdrawal of the 36-month Transportation Agreement with the United States Army Civilian Appellate Review Office which, on October 19, 1972, recommended that: (i) plaintiff be denied separation and renewal agreement (home leave) travel; (ii) plaintiff's place of legal residence be changed from Lewisburg, Tennessee, to Frankfurt, West Germany; and (iii) plaintiff be provided with a 12-month Transportation Agreement for entitlement to permanent change-of-station allowances.

position from which he was transferred (*i.e.,* Frankfurt) or be granted separation travel to the United States pursuant to the Travel Agreement and 5 U.S.C. § 5722(a)(2) and (c)(2). The Army declined to grant either request on the grounds that the 36-month agreement had been voided and the 12-month Transportation Agreement did not entitle him to return-transportation to the United States.[5]

In June 1972, approximately five and one-half months after he was removed from service, defendant allegedly acknowledged that plaintiff had been unlawfully separated from service by ordering that he be restored to his Worms position with back pay. Official authorization, therefore, issued to plaintiff on or about June 14, 1972, to relocate himself and his family back to Worms, West Germany, from Frankfurt. Following plaintiff's return to Worms, pursuant to the foregoing authorization, defendant advised plaintiff on or about July 17, 1972, however, that he would not be *totally* reimbursed for the expenses incurred in the relocation because (i) a Transportation Agreement (*i.e.,* DD Form 1617) is a condition precedent to the payment of such transportation expenses and (ii) he was not entitled to such an agreement.

Once again, on December 12, 1972, the WACPO notified plaintiff that on January 15, 1973, he would be terminated from his position in Worms, West Germany (to which he was previously *reinstated* on June 14, 1972) without cause or prejudice. Because of this involuntary separation, plaintiff demanded separation-travel to the United States (*i.e.,* to the actual place of residence recited in both the 36-month and the 12-month Transportation Agreements exe-

cuted in the latter part of 1971) in accordance with said Transportation Agreement(s) and applicable statutory law. Plaintiff's request, however, was summarily denied.

As a consequence of this denial, plaintiff took approved annual leave in the United States from approximately December 17, 1972 through January 15, 1973. However, by letter on or about January 11, 1973, plaintiff requested that he be returned to duty in Worms because his termination was procedurally defective.[6] In response to plaintiff's request, the WACPO forwarded a registered letter to plaintiff at the Lewisburg, Tennessee, address on January 22, 1973, and informed him that the termination action, effective January 15, 1973, had been rescinded and that he had five working days[7] to return to his duty station in Worms, West Germany. The return receipt contained a signature date of January 26, 1973, and on February 5, 1973, the date plaintiff contends he received *actual* notice, plaintiff telephoned WACPO to advise that it was not possible for him to return to Worms, West Germany, within five working days. Plaintiff reported for duty in Worms on February 21, 1973, after arriving in Frankfurt, West Germany on February 16, 1973.[8]

In early May 1973, plaintiff was notified by the American Red Cross that his mother had died, as a result of which he incurred travel costs to Tennessee to attend her funeral. After asserting a claim for reimbursement for such incurred expenditures, pursuant to applicable law and regulations, plaintiff was advised by defendant that such request was denied on the grounds that the Transportation Agreement negotiated with him on August 5, 1971, had been

---

**5.** This court notes that the Travel Agreement, DD Form 1617, grants no substantive rights. To the contrary, it merely delineates the conditions precedent to the entitlement of substantive rights otherwise prescribed by 5 U.S.C. § 5722.

**6.** This letter reflected a return address of Route 5, Box 152–A, Lewisburg, Tennessee, which was the same "actual residence" address reflected on the 36-month and 12-month Travel Agreements.

**7.** The record is not clear at what point the five days began to run, presumably from actual receipt of notice. No other conclusion makes sense.

**8.** It appears that plaintiff's delay in returning was at least in part attributable to the fact that he was in Washington, D.C. from February 7–13, 1973, seeking to obtain government travel allowances back to Germany. It is not indicated whether he was successful.

voided and that the agreement negotiated with him on August 9, 1971, did not include such emergency leave expenses.

In addition to the foregoing, plaintiff further states that on or about May 7, 1974, *i.e.*, three years following his employment in Frankfurt, West Germany, and every two years thereafter, applicable regulations entitled him to "renewal agreement travel" to his place of "actual residence at the time of appointment," as reflected in the August 5 and 9, 1971 Travel Agreements negotiated with defendant. Consistent with its prior position, the defendant denied plaintiff's request for such travel in May 1974, when the 36-month Transportation Agreement, had it not been voided, would have expired.

For the third time, plaintiff was removed by defendant from his position in Worms, West Germany, allegedly without cause or due process, effective December 8, 1978, following notice thereof on October 4, 1978, and was barred from competing for any federal positions. Similarly, as obtained with respect to his two previous removals in early 1972 and 1973, upon request, plaintiff was denied separation travel to his contended place of actual residence, as reflected in the 36-month and 12-month Transportation Agreements. During this period, plaintiff (a GS–9) was also "involuntarily detailed" to perform duties evaluated at the GS–11 level, for which higher level he was not compensated. Aggrieved by the foregoing, plaintiff, in remedy, appealed the contemplated separation and his apparent "blacklisting" to the U.S. Civil Service Commission, on or about October 14, 1978, which dismissed the petition on the grounds that it lacked jurisdiction. On or about December 14, 1978, plaintiff filed a motion re-

questing leave to join in a "similar action" then pending before this court. *See Werner, et al. v. United States,* 218 Ct.Cl. 746, 590 F.2d 344 (1978).[9] The motion was denied, and shortly thereafter, on December 20, 1978, he was "reinstated pending a determination as to whether he ... could be separated from the federal service without cause or compliance with the procedures prescribed by the Veterans Preference Act."

Pursuant to a directive of the Civil Service Commission, on or about April 13, 1979, plaintiff was appointed to the position of Supervisory Management Assistant, GS–344–9, and satisfactorily completed his supervisory probationary period as prescribed by applicable regulations. Thereafter, on or about September 18, 1979, plaintiff submitted an application for consideration for appointment to the position of Industrial Property Management Specialist, GS–1103–11. Although then presently employed as a GS–344–9, and having met the requirements of a probationary employee, plaintiff was informed by defendant that "he could not apply for or be considered for appointment to the position [*i.e.,* GS–1103–11] because he was not a dependent of a current federal employee."

Plaintiff apparently did not contest this decision, and on or about January 23, 1981, after again being notified by an agency of a vacancy for which he was apparently qualified, he duly applied for the position of Management Analyst (Real Property), another GS–11 position. Once again he was notified (March 10, 1981) that he was ineligible for this appointment and any other position because he was not a dependent of a current federal employee.[10] Because of

**9.** In *Werner,* plaintiffs, former civilian employees, sought back pay and reinstatement based on the Army's refusal to rehire them after their specific-term appointments had expired. The court dismissed the petition, holding that the failure to reappoint them was not a "removal" or a "discharge" because they held only temporary appointments, and therefore had no entitlement to additional appointments. 218 Ct.Cl. at 748, 590 F.2d 344.

**10.** The regulation providing the basis for this action was apparently Department of Defense Instruction (DODI) 1400.23, the purpose of which was to provide improved employment opportunities for dependents of U.S. military and civilian personnel in foreign areas. Plaintiff points out that, although he advised defendant that such questionable policies were set forth in regulations, they allegedly only restricted appointments to dependents at the GS–8 level and below, thus were not an impediment to his application. The defendant, neverthe-

the foregoing, plaintiff then took personal leave (March 20, 1981) and traveled to Washington, D.C., where he filed, on or about March 23, 1981, a petition in the United States District Court for the District of Columbia to enjoin the "continuing [denial of] his rights and benefits of public employment." For reasons unstated in the petition at bar, the district court never ruled on the request for injunctive relief.

While still in Washington, D.C., plaintiff was informed on April 3, 1981, that he had been reassigned to Alexandria, Virginia, and that he was to report within two weeks or be removed for insubordination. This involuntary reassignment was allegedly in retaliation for filing suit in the district court. Plaintiff's request for an extension of time to report was denied, with the informative caveat that he "could always resign in lieu of being removed." His written protest to the Civilian Personnel Officer in Europe was not answered.

Plaintiff returned to Germany on or about April 27, 1981, to arrange his affairs and was allegedly directed to bail his property to the government for later shipment to the United States. When he requested additional time to arrange his affairs and dispose of his personal property, plaintiff's request was denied with the observation that "he could resign if he did not like the assignment." Following the issuance of travel authorizations on April 27 and 28, 1981, plaintiff proceeded to Virginia *at his own expense* "abandoning in excess of $25,-000 in personal property." The record does not reflect a date when he left West Germany for Virginia.[11]

Between April 1981 and November 1982, however, plaintiff's property was not shipped to the United States, nor was he provided with funds to ship his property, and it was allegedly made "accessible to third parties resulting in a taking of such property valued at $1,408." After the petition was filed in this case, defendant amended the travel orders relocating plaintiff to Virginia, paid him $1,300 on or about June 25, 1982 (apparently for his travel expenses), and authorized him to *return* to West Germany for a period of 90 days within which to recover as much of his property as possible. Defendant did not, however, pay for plaintiff's trip (after November 1982) from Virginia to West Germany, nor was plaintiff provided funds with which to defray the cost of shipping his property on the grounds that, despite the violation of plaintiff's rights, "it lacked statutory or regulatory authority to correct the wrong by returning him to West Germany for the period to which he was initially entitled."

## PARTIES' CONTENTIONS

Plaintiff makes several claims relating to the Army's failure to provide him with travel, transportation and relocation allowances based on the 36-month agreement executed on August 5, 1971 and later withdrawn by the WACPO. First, in Counts I, III, V, and parts of IX and X of his petition, plaintiff claims that he is entitled to reimbursement for expenses *actually* incurred in 1971, 1972, 1973, 1981 and 1982 (Count X). Second, in Counts II, IV, VI and VII, he apparently claims damages for the Army's failure to provide travel after separations from employment in 1972, 1973 and 1978, and the denial in 1974 of "renewal agreement travel."[12] Plaintiff contends that

less, steadfastly refused to permit him to apply and be considered for such appointment.

11. On or about July 10, 1981, plaintiff filed a claim for reimbursement of the expenses associated with his transfer to Virginia, which transfer apparently was for the convenience of the government. The issue of reimbursement of plaintiff's 1981 relocation to the United States was later raised in Ct.Cl. No. 490–76, at which time the court allowed plaintiff 30 days within which to claim and prove such reimbursable expenditures. Because plaintiff's sub-

mission in April 1982 failed to comply with the court's specific and limited order of March 5, 1982, the court dismissed plaintiff's case in its entirety, including the claims for the April 1981 relocation expenditures, by Order dated May 7, 1982.

12. The court assumes plaintiff seeks damages rather than reimbursement for these denials because plaintiff does not allege that he actually traveled anywhere for which he would be entitled to reimbursement pursuant to statute or regulations.

these denials violate 5 U.S.C. §§ 5722, 5724, and 5728, the sections under which travel agreements and payments are authorized, and that he is therefore entitled to these allowances.

The remainder of plaintiff's claims, alleged in Counts VII, IX and X, relate to charges that he was improperly removed from federal employment in October 1978 and illegally barred from consideration for future appointment in violation of the Veterans' Preference Act, 5 U.S.C. §§ 3313–3315, 7511–7512, 7701 (1976). Plaintiff further contends that because he applied and was declared ineligible for promotion to certain higher grade positions in 1979 and 1981, he is entitled to "just compensation for the taking of his property," *i.e.,* his right to apply and be fairly considered for appointment. Accordingly, he seeks back pay for the positions to which he alleges he *should* have been appointed, damages for the Army's failure to compensate him for the performance in 1978 of duties of a higher grade than that to which he was assigned, and compensation for the "taking."

Defendant, in its motion for summary judgment, argues that all of plaintiff's travel-related claims must be dismissed because they were previously adjudicated (*i.e.,* they are barred by the doctrine of *res judicata*) against him in a case brought by plaintiff in our predecessor court, *Brown, et al. v. United States,* Ct.Cl. No. 490–76 (Orders filed June 27, 1978, March 5, 1982 and May 7, 1982). There, as here, plaintiff claimed entitlement to the 36-month Transportation Agreement and certain statutory benefits allegedly accruing to him pursuant to 5 U.S.C. § 5722. Alternatively, the government contends that these claims are barred by the statute of limitations and laches.

Defendant further contends that this court is without jurisdiction to grant relief for the alleged wrongful failure to promote plaintiff, for the alleged unreasonable actions removing plaintiff from service in

1978, and for his 1981 transfer from West Germany to Virginia because these claims are not based on "money mandating" constitutional provisions, statutes or regulations within the meaning of the Tucker Act, 28 U.S.C. § 1491. In addition, the government points to a second case brought by plaintiff in this court, *Brown v. United States,* Ct.Cl. No. 561–79C (Order, September 17, 1982), in which similar issues were resolved against plaintiff, thus again raising the *res judicata* defense.

## ISSUES

Against this background, and in view of the posture of this case on cross-motions for summary judgment, the broad issues to be determined here are as follows:

(1) whether the doctrine of *res judicata* operates to bar any or all claims brought by plaintiff;

(2) in the alternative, whether those claims asserted in Counts I, II, III, IV, V and VI are barred by the statute of limitations and the doctrine of laches; and

(3) whether those claims in Counts VII (in part), VIII, IX and X are beyond the jurisdiction of this court because they fail to state claims upon which relief may be granted.

## DISCUSSION

*A. Travel-Related Claims: Counts I–VI*

Plaintiff, in Counts I through V, makes several claims for travel, transportation, separation and relocation allowances based on the withdrawn 36-month Transportation Agreement and the various statutory and regulatory provisions relating to the same.

In Count I, he alleges that he is entitled, based on 5 U.S.C. §§ 5722 and 5724a, to reimbursement of the expenses associated with his relocation from Frankfurt to Worms, West Germany in August 1971. In Count II, he claims that on January 3, 1972,[13] he was removed from his position for

---

**13.** In Ct.Cl. No. 561–79C, plaintiff alleged that he was removed on December 20, 1971, rather

than January 3, 1972, in a claim in which he asked for back pay during the period prior to

reasons beyond his control (allegedly in retaliation for contesting the withdrawal of the 36-month Transportation Agreement), and based on § 5722, should have been returned to his actual place of residence, which he alleges to be Lewisburg, Tennessee. Plaintiff alleges in Count III that after he was reinstated to his position at Worms on June 14, 1972, he again relocated from Frankfurt to Worms, and should, as a consequence, have been reimbursed for these expenses. Plaintiff relies on 5 U.S.C. §§ 5722, 5724a and 5596 as authority for this claim.

Next, in Count IV, plaintiff grieves that he again was removed from service on January 15, 1973, and in accordance with the 36-month Transportation Agreement, 5 U.S.C. § 5722 and the regulations promulgated thereunder, was entitled to separation travel to the United States.[14] Finally, in Count V, plaintiff claims that under § 5722 and the 36-month Transportation Agreement, his expenses for travel to the United States in May 1973 to attend his mother's funeral should also be reimbursed.

Defendant maintains, in opposition, that all of these claims are barred by the doctrine of *res judicata,* based on this court's decision in Ct.Cl. No. 490–76. Alternatively, the government argues that these claims are barred by the statute of limitations and laches.[15]

### (1) *Counts I–V: Statute of Limitations*

With respect to the statute of limitations argument, 28 U.S.C. § 2501 provides that causes of action arising more than six years before suit is brought are barred. Plaintiff filed this suit on May 17, 1982; therefore, all causes of action arising before May 17, 1976, are barred. The definitive question, then, is when did the causes of action complained of in Counts I through V accrue.

While at first blush it may seem unfair to deny claims regardless of their merit, the rationale underlying the statute of limitations is that "such statutes are necessary in order to insure prompt handling and to prevent such claims from being withheld until ... evidence [has] become obscured or unavailable by the passage of time." *Braude v. United States,* 218 Ct.Cl. 270, 278, 585 F.2d 1049, 1054 (1978). The accrual dates of these causes of action are indisputable with respect to these counts inasmuch as plaintiff states unequivocally in his petition the dates on which each arose. In Count I, he states that "this cause of action arose on or about August 16, 1971...." In Count II, he states that "this cause of action arose on or about January 3, 1972...." Similarly, in Counts III, IV and V, he lists July 17, 1972, January 15, 1973, and May 5, 1973, respectively, as the dates on which those causes of action arose. By his own admission, then, plaintiff's claims in these five counts are clearly beyond the statute of limitations. Accordingly, they are dismissed.[16]

### (2) *Counts I–V: Res Judicata*

Even absent the bar of the statute of limitations, Counts I through V must also be dismissed on the grounds that this court's decision in Ct.Cl. No. 490–76 is *res judicata* with respect to each. The doctrine

---

his reinstatement in June 1972. The court makes no finding as to which of these dates represents the actual date of plaintiff's removal, but merely notes the discrepancy.

**14.** By stipulation in Ct.Cl. No. 490–76, plaintiff received back pay and leave time credits for this separation, resulting from his having been improperly placed on leave without pay (LWOP) status. Order, March 5, 1982.

**15.** In all counts in which the defense of laches is raised, inasmuch as the court disposes of such counts on other grounds, it does not reach the laches issues.

**16.** Plaintiff's argument that defendant's "reliance" upon its conduct in 1971, withdrawing the 36-month Transportation Agreement, has the effect of making plaintiff's cause of action a continuing one is tortuous and simply wrong. A claim against the United States first accrues on the date when all the events have occurred which fix the liability of the government and entitle the claimant to institute an action. *Oceanic S.S. Co. v. United States,* 165 Ct.Cl. 217, 225 (1964).

of *res judicata* provides that a final decision on the merits of a claim bars a subsequent action between the same parties or their privies on that claim or any part thereof. *Lawlor v. National Screen Service,* 349 U.S. 322, 326–27, 75 S.Ct. 865, 867–68, 99 L.Ed. 1122 (1955); *Sterner v. United States,* 2 Cl.Ct. 253, 254 (1983); *see also Sexton v. United States,* 215 Ct.Cl. 1059, 578 F.2d 1388 (1978). More importantly, the doctrine extends beyond those causes of action expressly included by the plaintiff in his claim to cover causes of action which were not but *should* have been raised in the prior litigation. *Container Transport International, Inc. v. United States,* 199 Ct.Cl. 713, 717, 468 F.2d 926, 928 (1972). The purpose of *res judicata* is to promote reliance on judicial decisions, prevent vexacious litigation, and permit courts to resolve other pending suits being litigated for the first time. *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979); *Diliberti v. United States,* 2 Cl.Ct. 404 at 408 (1983) (SETO, J.).

In determining whether a given issue or cause of action should have been raised in a prior proceeding,

> the modern trend is ... to insist first, that a plaintiff raise his entire "claim" in one proceeding, and second, to define "claim" to cover all the claimant's rights against a particular defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. In deciding what factual grouping constitutes a transaction and what groupings make a series of connected transactions, the tribunal acts pragmatically, giving way to such considerations as whether the facts are related in time, space, motivation or the like so as to form a convenient trial unit, and whether their treatment as a unit con-

forms to the parties' expectations or business understanding or usage. (citations omitted)

*Container Transport* at 717, 468 F.2d at 928–29. *See also Bayshore Resources Co., Inc., et al. v. United States,* 2 Cl.Ct. 625 at 635 (1983) (LYDON, J.).

■ In Ct.Cl. No. 490–76, which was filed December 3, 1976, long after all the causes of action asserted here in Counts I through V had arisen, plaintiff complained of a series of actions taken by the Army relating to his service as a civilian employee. Specifically, he asked for a living quarters allowance (LQA) in connection with his transfer from Frankfurt to Worms in August 1971, back pay for the period after his removal from service on January 15, 1973, and entitlement to travel allowance to the United States upon his separation from the service, based on the withdrawn 36-month Transportation Agreement.[17]

Clearly, then the demands in Counts I, II, III, IV and V, for relocation expenses for the move from Frankfurt to Worms in August 1971, separation travel after the January 1972 removal from service, relocation expenses for the second move from Frankfurt to Worms in June 1972, travel expenses incurred after the January 1973 removal, and reimbursement for the 1973 trip to Tennessee for his mother's funeral should have been raised in Ct.Cl. No. 490–76. Indeed, plaintiff would not have run into the statute of limitations bar had he raised these issues in Ct.Cl. No. 490–76. There is no question that the parties in these cases are the same, and the claims here all arise out of the same transaction, or series of transactions, that were the subject of the prior action. The claims are also clearly related in time, space and motivation. The

---

**17.** In its Order of June 27, 1978, the court denied the LQA claim, and the back pay issue was settled by stipulation, granting plaintiff $1,000 and leave time credits for the period of his removal. Addressing the claim for entitlement to the separation benefits of the 36-month Transportation Agreement in a later order, the court held only that the statutory authority for such payments, 5 U.S.C. § 5722, limits pay-

ments of travel expenses to those incurred at the beginning and end of a tour of duty, and then only for travel between the continental United States and overseas duty posts. Because plaintiff had not yet ended his tour of duty, the court dismissed that claim for failure to state a claim upon which relief could be granted. Order, March 5, 1982.

court finds, therefore, that Counts I through V must be dismissed on the additional ground of *res judicata*.[18]

### (3) *Count VI: Genuine Issue of Material Fact*

The allegations made in Count VI present problems different than those heretofore encountered. Plaintiff claims that he has been denied "renewal agreement travel" (home leave) to which he is entitled, based on 5 U.S.C. § 5728 and the regulations promulgated thereunder. He alleges that the cause of action arose "on or about May 7, 1974, at Frankfurt, West Germany, and repetitively every 24 months thereafter (*i.e.*, May 7, 1976, May 7, 1978, May 7, 1980, etc)." Again, plaintiff admits that he previously instituted action on this cause in Ct.Cl. No. 490–76.[19] Defendant argues, as with the other counts, that this claim is barred by *res judicata*, the statute of limitations, and laches.

At first glance, it would appear that for the reasons noted earlier in connection with Counts I through V, the first two components of this count, arising on May 7, 1974 and May 7, 1976, are barred by the statute of limitations. Plaintiff, however, points to an exception to the statute of limitations that we must address.

The "beyond the seas" exception to 28 U.S.C. § 2501 provides that a "petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases." The tolling effect of the beyond-the-seas doctrine, therefore, is terminated by a re-entry into the United States, and a subsequent departure does not prevent the running of the statute of limitations. *Brown v. United States*, Ct.Cl. No. 561–79C, slip op. at 5 (Order, September 17, 1982) (two-month vis-

it to United States after cause of action accrued marked beginning of statutory period, even though claimant then returned overseas). *See also Savage v. United States*, 23 Ct.Cl. 255 (1888). The question, then, is whether plaintiff came to the United States after May 7, 1974, and May 7, 1976, the dates on which these components of the cause of action in Count VI arose, and if so, when.

Based on his pleadings, it is impossible to determine when, if ever, plaintiff was in the United States between May 1973, after he was in Tennessee for his mother's funeral, and March 1981, when he went to Washington to file a suit for injunctive relief in the United States District Court for the District of Columbia. Neither of these trips would serve to negate the tolling effect of the beyond-the-seas exception, because the causes of action (1974 and 1976) had not arisen when plaintiff took the first trip, and the complaint in the instant case was filed within three years after the March 1981 trip to Washington. Thus, it is not possible to resolve either of these two claims on motion for summary judgment because there is a genuine issue of material fact as to when or whether plaintiff returned to the United States after his 1973 trip for his mother's funeral and prior to March 1981, which precludes a present determination as to whether the beyond-the-seas exception applies to plaintiff.

The remaining portions of Count VI, alleged to have arisen on May 7, 1978, and May 7, 1980, are not barred by the statute of limitations. Nor are *any* claims in Count VI, including the 1974 and 1976 claims, barred by the doctrine of *res judicata*, despite plaintiff's statement that they were before the court in Ct.Cl. No. 490–76. This is so because the decision in Ct.Cl. No. 490–

---

18. Moreover, plaintiff again unequivocally admits in his Petition that the claims in each of the first five counts were the subject of the action in Ct.Cl. No. 490–76. In each count, he states "... with prior suit having been instituted thereon in this Court on December 15, [*sic*] 1976 (*James E. Brown, et al. v. United States*, Ct.Cl. No. 490–76, dismissed May 7, 1982)."

19. In Ct.Cl. No. 490–76, plaintiff maintained that if his actual place of residence was found to be the United States, he would thereby be entitled to reimbursement for home leave in 1974, 1976, 1978 and 1980, and for emergency leave taken in May 1973.

76 was based solely on the court's interpretation of 5 U.S.C. §§ 5722, 5596 and 5941, relating to the 36-month separation Travel Agreement, back pay, and living quarters allowances, respectively. As noted earlier, the court there held that separation travel (*i.e.,* travel authorized under § 5722) applies only at the beginning and end of a tour of duty, and because plaintiff had not ended his tour of duty as of the time the decision was rendered, he was not eligible for travel under § 5722. Because § 5722 does not cover home leave and emergency travel, and because plaintiff cited no other authority upon which to base his entitlement to such leave, the court expressly declined to pass on the home and emergency leave issues raised by plaintiff as "beyond the purview of this case and cannot be addressed or considered here." Ct.Cl. No. 490–76, slip op. at 3 (Order March 5, 1982).

Thus, still aggrieved, plaintiff seized the opportunity to raise those issues in Count VI of this proceeding. The home leave claim [20] is based on 5 U.S.C. § 5728, and relates to leave taken between tours of duty, *i.e.,* it presumes that the employee whose round-trip expenses are paid by the government is not separating from the service but rather has agreed to serve another tour of duty following the home leave. Essentially the statute provides for vacation leave. Thus, defendant's *res judicata* argument with respect to Count VI, given the court's ruling in Ct.Cl. No. 490–76, misses the mark and is not a bar to this court determining plaintiff's entitlement to recover on his claim for home leave.

■ With respect to home leave, 5 U.S.C. § 5728(a) provides that:

Under such regulations as the President may prescribe, an agency shall pay from its appropriations the expenses of round-trip travel of an employee, and the transportation of his immediate family, but not household goods, from his post of duty outside the United States to the *place of his actual residence at the time of appointment or transfer to the post of duty,* after he has satisfactorily completed an agreed period of service outside the continental United States and is returning to his actual place of residence to take leave before serving another tour of duty at the same or another post of duty outside the continental United States *under a new written agreement made before departing from the post of duty.* [emphasis added]

As the court reads § 5728, it appears to provide for either reimbursement of such expenses actually incurred by an employee, or, once the employee has obtained official authorization for such travel, an advance of funds to pay the expenses initially. It is clear, however, that nothing in § 5728 remotely suggests, and we so hold, that an employee is entitled to be paid the value of such if he does not actually take the home leave trip, even though he may be so entitled.

The Department of Defense Joint Travel Regulations (JTR) shed some light on tours of duty and renewal agreements, which, as we read them, are threshhold matters pertinent to our discussion here. JTR C4005 provides that a civilian tour of duty is an initial appointment of 36 months, with negotiated renewal agreements available for 24 months. Read in conjunction with § 5728, then, a civilian employee may be entitled to home leave travel at the end of the initial 36-month period, and again every 24 months thereafter, provided he meets the other requirements of § 5728.

■ Plaintiff, however, nowhere alleges, nor is it otherwise evident, that he actually took home leave during the period in question here, that is, May 7, 1974 through May 7, 1980.[21] Even if he did take such

---

**20.** The emergency leave claim made in Ct.Cl. No. 490–76 and here relates to plaintiff's trip to the United States for his mother's funeral. As discussed above, this claim is dismissed on the basis of the statute of limitations and *res judicata.*

**21.** As discussed earlier, if plaintiff did indeed return to the United States after May 7, 1974 and May 7, 1976, his claims regarding these causes of action in Count VI will thereby be barred by the statute of limitations, as the

leave at his own expense, however, to be entitled to the requested benefits he still must meet the other requirements of § 5728, *i.e.,* (1) he must show that his actual place of residence was in the United States, and (2) he must also show that he in fact negotiated written agreements *before* departing the overseas post to take leave.[22]

None of these facts is before the court on these motions for summary judgment. Because this appears to be a claim upon which plaintiff *may* be entitled to some relief, and about which there are genuine issues of material fact, we must deny both parties' motions and proceed further to bring the necessary facts to light.

### B. *Employment and Promotion-Related Claims: Counts VII–X*

The remainder of plaintiff's claims, advanced in Counts VII through X, relate to allegations that he was improperly removed from service, illegally barred from consideration for future federal employment, denied promotion to positions to which he claims he was eligible, and subjected to arbitrary and unreasonable treatment in connection with his 1981 transfer to Alexandria, Virginia.

In Count VII, plaintiff specifically alleges that he was removed from service "without cause or due process" on October 4, 1978, effective December 8, 1978, and barred from consideration for future appointment in violation of the Veterans' Preference Act, 5 U.S.C. §§ 3313–3315, 7511–7512, 7701 (1976). Because he was so removed from service, he also claims entitlement to separation travel to his actual place of residence as reflected in the 36-month Transportation Agreement, based on § 5722. In the same count, he further states that on October 4, 1978, he was "involuntarily detailed" to perform duties which were evaluated at the

GS–11 level, but which were "declassified for [the] purpose of denying petitioner proper compensation for his services. . . ." As relief for this unlawful action, plaintiff seeks damages in the form of the differential between his scheduled salary and the salary of the position to which he was detailed.

In response, defendant argues that these claims are barred by the doctrines of *res judicata* and laches, and further that they are beyond the jurisdiction of this court because they fail to state claims upon which relief may be granted. We agree that plaintiff's claims are barred by the doctrine of *res judicata* and failure to state a claim.

■ Plaintiff's claims in Count VII are barred by *res judicata,* because each of the claims was litigated and determined in previous cases. With respect to the allegation that he was improperly removed from service in October 1978 and barred from future appointment, this specific claim was the subject of D.C. No. 79–230 filed in the U.S. District Court for the District of Columbia on January 23, 1979. There, plaintiff challenged the October 1978 removal and a second alleged removal in April 1979. In its order of October 27, 1981, the district court found that plaintiff's appointment was a limited one, not to exceed December 8, 1978, and that three days after this expiration date, the Army retroactively extended plaintiff's appointment from December 9, 1978, to April 4, 1979. The court further found that Brown received at least two subsequent reappointments, without any break in employment, to the same or higher positions.[23] The court thus concluded that plaintiff's allegation that he was improperly removed and barred from future appoint-

---

beyond-the-seas exception will not prevent its running.

**22.** The issue of plaintiff's "actual place of residence" was before the court in Ct.Cl. No. 490–76. The court, however, never directly addressed the question, apparently because plaintiff did not then meet the first requirement of § 5722, *i.e.,* he had not ended his tour of duty for separation travel purposes, and it was

therefore unnecessary to reach the residence question until he in fact separated from civilian service.

**23.** The district court did not indicate the precise dates covered by these subsequent appointments. Plaintiff admits, however, that in April 1979, he was appointed to the position of supervisory Management Assistant, GS–344–9.

ment was moot, and accordingly dismissed the action.

Thus, based on the district court's finding, this portion of plaintiff's claim in Count VII regarding the October 1978 removal must be dismissed on the grounds of *res judicata.* A court of competent jurisdiction heard and decided this claim in a prior case, and we are bound by that court's determination.

In addition, because the district court found that plaintiff had incurred no break in employment after his appointment had been extended, and that he had been granted two subsequent appointments, we must necessarily dismiss his claim to separation travel to the United States. Entitlement to such travel accrues only at the beginning and end of a tour of duty, *see Brown v. United States,* Ct.Cl. No. 490–76, and it is clear from the above discussion that plaintiff, at least as of December 1978, had not ended his tour of duty. Consequently he is not eligible for the separation travel allowance he claims in Count VII.

Plaintiff's claim in Count VII to the differential in salary for the position to which he was "involuntarily detailed" in 1978 must also be dismissed, because this court is generally without jurisdiction to hear such claims. The Supreme Court has held that neither the Classification Act, 5 U.S.C. § 5101 et seq., nor the Back Pay Act, 5 U.S.C. § 5596 (1976 and Supp. IV 1980), upon which plaintiff relies, creates a substantive right to back pay for the period of a claimed wrongful classification. *United States v. Testan,* 424 U.S. 392, 407, 96 S.Ct. 948, 957, 47 L.Ed.2d 114 (1976). Thus, although plaintiff may have performed duties of a higher grade position, he has no right to back pay based on that higher grade position. It is clear then that this court has no jurisdiction over this claim.[24] Count VII, therefore, is dismissed in its entirety.

Plaintiff states in Count VIII that the Army's refusal on September 18, 1979, to allow him to apply or be considered for appointment as Industrial Property Management Specialist, GS–1103–11, constituted a violation of the Veterans' Preference Act and a "taking" of a property right protected by the fifth amendment. As "just compensation" for this "taking," plaintiff asks for the difference between the salary for the position to which he reasonably could expect to have been appointed and the salary he actually received.

Defendant contends that this claim is barred by the doctrine of laches, and that this court is without jurisdiction over complaints seeking damages for wrongful failure to promote.

We agree with defendant's contention that this court is without jurisdiction to provide relief for persons aggrieved by such adverse promotion decisions. This court has consistently held that a federal employee is entitled only to the rights and salary of the position to which he has actually been appointed by one having the authority to do so. *See, e.g., Russell v. United States,* Ct.Cl. No. 165–82C (Order May 14, 1982); *Baker v. United States,* 222 Ct.Cl. 263, 271–72, 614 F.2d 263, 268 (1980). Applying this settled principle, this court has routinely dismissed claims such as those asserted here which seek a constructive promotion and back pay. *See, e.g., Goutos v. United States,* 212 Ct.Cl. 95, 98, 552 F.2d 922, 924 (1976); *Peters v. United States,* 208 Ct.Cl. 373, 376–80, 534 F.2d 232, 234–36 (1975). "[T]his Court is not in the promotion business." *Arwine v. United States,* 218 Ct.Cl. 685, 687, 590 F.2d 343 (1978). Therefore, these claims seeking compensation under the Back Pay Act, 5 U.S.C. § 5596 (1976 and Supp. IV 1980), for the back pay of positions to which plaintiff was never ap-

---

24. Plaintiff made a similar claim in Ct.Cl. No. 561–79C. There, in an amended petition filed in April 1981, he alleged that he was detailed to perform duties evaluated at the GS–12 level while being compensated at the GS–7, GS–8, and GS–9 levels, and that "he has performed these duties ... since July 1, 1974." Inasmuch

as there is any overlap between the action complained of in that case and here, where plaintiff states that the cause of action arose on October 4, 1978, this claim clearly should have been raised in Ct.Cl. No. 561–79C, and is therefore barred on the additional ground of *res judicata.*

pointed, are dismissed as not within the jurisdiction of this court.

█ With regard to the "taking" claim asserted in Count VIII, resulting from the Army's alleged refusal to consider him for appointment, this claim too must be dismissed. A failure to consider plaintiff eligible for certain positions does not fit the elements of a "taking" in the constitutional sense. There must first be a property right in the thing which is alleged to have been taken. Here, plaintiff claims the "right" to apply for and be considered for appointment is a protected property right, and he relies on provisions of the Veterans' Preference Act and the fifth amendment as the sources of this "right." The statutory provisions, however, which deal with applicant eligibility and employment lists,[25] "do not create an interest in property subject to being taken for public use." *Mack v. United States,* 225 Ct.Cl. 187, 191, 635 F.2d 828, 832 (1980). Thus, because there is no property right implicated here, there can be no taking. In addition, a violation of the fifth amendment "does not in itself obligate the federal government to pay money damages." *Werner, et al. v. United States,* 218 Ct.Cl. 746, 590 F.2d 344 (1978); *Walton v. United States,* 213 Ct.Cl. 755, 757 (1977). Plaintiff's claims in Count VIII are therefore dismissed.

Next, in Count IX of the petition, plaintiff alleges a number of wrongs perpetrated against him. First he complains that a similar refusal to consider him eligible in March 1981 for the position of Management Analyst (Real Property), GS–343–11, also constitutes a violation of the Veterans' Preference Act and a "taking."[26] Again, he seeks compensation in the form of the differential in salaries. Also in this count, plaintiff maintains that the Army's actions (including the "removal" from his position) surrounding his transfer from West Germany to Virginia in 1981 were arbitrary and unreasonable actions for which he deserves compensation. Specifically, he seeks damages premised on the Army's "arbitrary and unreasonable" conduct in not allowing him 45 days within which to clear the overseas post (as allegedly provided in Army regulations), and because the transfer itself was "in violation of law and valid administrative regulations." He also alleges that this "removal" was unlawful as it was in retaliation for his filing suit in the district court.

Again, defendant argues that this court is without power over promotion decisions. Defendant further argues that the claim relating to the "unreasonable" actions surrounding plaintiff's transfer in 1981, has not been shown by plaintiff to violate any statute or regulation providing for the recovery of money damages from the United States. Finally, defendant asserts that the claim regarding inadequate reimbursement for the transfer to Virginia is barred by *res judicata.* We agree with defendant on all aspects of this count.

First, for the reasons already noted in connection with the disposition of Count VIII, plaintiff's claim in Count IX concerning the refusal to consider him for appointment in March 1981 and the alleged "taking" resulting therefrom is dismissed.

---

**25.** Plaintiff states that since 1973, he has been "blacklisted" by the Army's civilian personnel officials in Europe because they allegedly would not allow his name to be placed on employment lists. He further states that he would have no cause of action before this court had he been permitted to place his name on the employment lists and considered for appointment "in the manner prescribed by the Veterans' Preference Act and Civil Service Regulations."

In Ct.Cl. No. 561–79C, plaintiff alleged, among other things, that defendant's failure to place his name on Army employment lists violated the Veterans' Preference Act of 1944.

The court dismissed this claim as beyond its jurisdiction, not being based on a "money mandating" statutory provision. To the extent that plaintiff makes the same claim here, it is also dismissed on grounds of *res judicata.*

**26.** In D.C. No. 79–230, in an amended petition, plaintiff raised the issue of the March 10, 1981 refusal to consider him for appointment. The district court dismissed the claim, finding that nothing in the record indicated that he had been refused consideration for appointment, particularly in view of the fact that he was still employed by defendant at the time the action was filed. Slip op. at 5.

Next, regarding the damages sought for the alleged unreasonable actions surrounding his transfer from his position in West Germany in April 1981 and the relocation to Virginia, this relief too is beyond our jurisdiction.

In order to maintain a claim in this court, other than on a contract, a plaintiff must show that money is presently due from the United States because it has been improperly paid, property has been taken by the government, or a particular provision of law confers a right to be paid a certain amount. *Mack,* 225 Ct.Cl. at 191, 635 F.2d at 831–32; *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967). The jurisdiction conferred by 28 U.S.C. § 1491 "requires that the constitutional provision, statute or regulation cited by a plaintiff *mandate* compensation from the Government by the award of money damages." *Mack,* 225 Ct.Cl. at 191, 635 F.2d at 832 [emphasis added]. Without such a mandate, this court cannot grant relief under § 1491, although some separate general principle arising, for example, under tort law, might lead to a remedy in another forum or under some special relief provision. *Eastport,* 178 Ct.Cl. at 608, 372 F.2d 1002.

Here, plaintiff has not cited any constitutional provision, statute or regulation which "can fairly be interpreted as mandating compensation by the federal government for the damage sustained." *Id.* at 607, 372 F.2d 1002. He alleges that the Army violated its own regulations specifying the time allowed employees to clear an overseas area, and that the transfer was in retaliation for his having filed suit in the U.S. district court complaining of improper promotion policies. Because there is no provision upon which to base relief for this "violation" in this court, this claim must also be dismissed.

The next claim in Count IX charges the Army with failure to reimburse him for his expenses, as agreed, for the April 1981 transfer from West Germany to Virginia. Plaintiff admits, however, that defendant paid him $1,300.00, as a result of amended travel orders connected with this relocation; thus plaintiff has recovered on this claim. Even if plaintiff had not been totally reimbursed, defendant correctly notes that plaintiff is not entitled to additional relief here. In Ct.Cl. No. 490–76, the court, in its Order of May 7, 1982, dismissed this claim because plaintiff's submission of evidence on the issue did not conform to the narrow specifications allowed by the court in its March 5, 1982 Order. Because a dismissal under RUSCC 41(b), unless otherwise noted, is an adjudication on the merits, plaintiff is thereby precluded from raising this claim in another proceeding. This claim is therefore dismissed.

Finally, in a "catch-all" pleading in Count IX of his petition, plaintiff asks that (1) he be restored to his "former position" and made whole; (2) he be appointed to the position of Management Analyst, GS–11, retroactive to May 1, 1981; (3) all personnel actions affecting him since 1971 be declared "null and void"; and (4) defendant be "permanently enjoined" from taking actions adverse to plaintiff.

With respect to plaintiff's first and third requests, this court does have power to issue orders directing restoration to office and correction of personnel records, *see* 28 U.S.C. § 1491(a), but *only* as an incident of and collateral to a *money* judgment. *Id.* See also *Smith v. United States,* 228 Ct.Cl. 168, 170, 654 F.2d 50, 52 (1981); *Dashiell v. United States,* 226 Ct.Cl. 711, 652 F.2d 69 (1981). This court's discretionary power under § 1491(a)(2) is limited *only* to circumstances, not present here, "to complete the relief afforded by the judgment." Because no relief has been afforded by this court's judgment in that plaintiff's money claims regarding the personnel actions against him have been dismissed, this court must also dismiss these claims for reinstatement and correction of his records as beyond its power.

Further, this court has no general equitable power, and sovereign immunity has not been waived, authorizing it to pass on the propriety of promotion deci-

sions. For the following reasons, as stated in *Arwine v. United States, supra,* plaintiff's demand that he be appointed to the position of Management Analyst is also dismissed:

the [Claims Court] may not grant promotions or back pay where the exercise of such power would result in the substitution of the court's judgment for the executive agency's decision. Our power, if any, hinges upon a party's entitlement to such a remedy based upon a statute or regulation. (citations omitted)

218 Ct.Cl. at 687, 590 F.2d 343. Last, this court's injunctive power under 28 U.S.C. § 1491, as amended by the Federal Courts Improvement Act of 1982, is limited to contract claims brought before the contract is awarded, and clearly does not contemplate the specific relief prayed for here. Thus we are without power to enjoin defendant from taking any personnel actions adverse to plaintiff. Accordingly, all of these final claims in Count IX are dismissed.

In Count X, filed as an amended petition in December 1982, plaintiff alleges that because he was compelled to relocate to Virginia on such short notice in 1981, he was forced to abandon a great deal of personal property in West Germany. He further states that on April 28, 1981, he was directed by defendant to bail his property to it for later shipment to the United States. Plaintiff then states that between this time and November 17, 1982, his property was not shipped to Virginia, and "was made accessible to third parties, resulting in a taking of such property" in violation of the fifth amendment. Accordingly, plaintiff seeks damages for this "taking." In addition, plaintiff contends that because defendant failed to ship the property as agreed, it was necessary for him to return to Germany in late 1982 to make his own shipping arrangements; thus plaintiff claims that

defendant must reimburse him for $604 in travel expenses incurred for this trip.[27]

■ First, the "taking" claim is moot, because plaintiff candidly admits that he "has recovered a substantial amount of the property for which he sought recovery in this action." For this property recovered, plaintiff is clearly not entitled to compensation.

■ Even if there remains property which plaintiff has not recovered, however, there is no "taking" for which plaintiff may be compensated. Not every deprivation of the use or control of property is a taking. There must be a clear intent to take, and the actions of the government on which a taking claim is premised must be authorized either expressly or by implication, by some valid act of Congress. *Jaffe v. United States,* 220 Ct.Cl. 666, 668, 618 F.2d 122 (1979); *Sun Oil Co. v. United States,* 215 Ct.Cl. 716, 770, 572 F.2d 786 (1978). The property taken must also have been taken for a public use. U.S. Const. amend. V. Here, there is no evidence of any intent whatsoever by the Army to take plaintiff's property for public use, nor does plaintiff cite an act of Congress which could provide the authority for such action. Merely making property "accessible to third parties" does not rise to the level of a taking. If plaintiff's unrecovered property has been lost or destroyed, his claim for the resulting loss sounds in tort, an area beyond this court's jurisdiction. *Shull v. United States,* 229 Ct.Cl. —— (Order, January 8, 1982). Therefore, these claims surrounding the 1981 transfer are dismissed.

■ Second, plaintiff's claim for the $604 in travel expenses to Germany is denied. Plaintiff relies on 5 U.S.C. § 5724, the provision authorizing payment of travel expenses for employees *transferred,* as the basis for this demand. The expenses in-

---

27. Plaintiff states that "on June 25, 1982, defendant conceded that plaintiff had been improperly denied the opportunity to clear and remove his property from the overseas area following his removal and granted him 90 days personal leave to return to the overseas area . . . to recover as much of his property as

possible." Plaintiff adds that defendant declined to pay the expenses to Germany because "despite the violation of petitioner's rights, it lacked statutory or regulatory authority to correct the wrong by returning him to Germany for the period he was initially entitled."

curred, however, were not connected in any way with a transfer. Plaintiff's transfer from Germany to Virginia occurred in April 1981; the trip for which plaintiff claims reimbursement took place in November 1982, long after his transfer had been completed. Nothing in § 5724 justifies payment of plaintiff's expenses for this trip, and again plaintiff has failed to show that any "money mandating" statute or regulation gives this court jurisdiction to provide the requested relief. This claim too is dismissed.

## CONCLUSION

The foregoing personnel actions against plaintiff have, in remedy, induced protracted, if not vexatious, *pro se* litigation respecting facts covering the last 12 years, which has been only marginally redeeming. While plaintiff's predilections have caused him to pursue his rights aggressively and unswervingly, it is evident that if there ever was a case that argued strongly for professional representation, certainly this is it. However, since plaintiff elected to pursue his rights *pro se,* which undoubtedly was within his prerogatives, he necessarily assumed the risk, as he must, of his "shortcomings" with respect to the technical niceties of procedural and substantive law. Certainly, had legal counsel been retained, plaintiff undoubtedly would not have been faced, as here, with the procedural bar of the statute of limitations and *res judicata,* and therefore would have obtained a resolution of the issues, disposed of on the foregoing grounds, on the merits.

Having so cast his lot and obviously cognizant of the attendant risks of proceeding *pro se,* plaintiff's action or inaction, if you will, is the prime reason for the posture of this case. While every reasonable opportunity has been afforded plaintiff to pursue his perceived rights, it must be emphasized that there are no procedural or substantive rules that are peculiarly applicable to *pro se* litigants. Because of the foregoing, and the fact that the same rules apply to *pro se* plaintiffs as do to professionally represented litigants,

IT IS THEREFORE ORDERED that defendant's motion for summary judgment as to Counts I through V, and VII through X is granted and the related motion of plaintiff with respect to said counts is denied for the reasons previously expressed. With respect to Count VI the cross-motions of the parties for summary judgment are denied inasmuch as there are genuine issues of material fact requiring a trial on the merits.