**Vernon and Dora PRAIRIE**

v.

**The UNITED STATES.**

**No. 339–83T.**

United States Claims Court.

March 9, 1984.

Vernon Prairie, pro se.

Kevin B. Shea, Washington, D.C., with whom was Asst. Atty. Gen., Glenn L. Archer, Jr., Washington, D.C., for defendant.

OPINION

LYDON, Judge:

This case comes before the court, without oral argument, on defendant's motion to dismiss.[1] Defendant's motion is grounded on the contention that plaintiff's complaint is barred by the doctrine of *res judicata.*

Plaintiffs, appearing *pro se,* have filed a document, which has been treated as a complaint, that is most sketchy and somewhat unclear. As best the court can determine, the gist of this "complaint" challenges the validity of two levy (seizure) actions taken by the Internal Revenue Service (IRS) in furtherance of collecting from plaintiffs certain income taxes owed the government. The first levy plaintiffs complain about occurred on October 11, 1978, when two certificates of deposit owned by plaintiffs in the amount of approximately $18,288.09 were seized by the IRS at the First Northwestern National Bank of Marshall, Minnesota (Marshall seizure). The second levy plaintiffs complain about occurred on · or about April 29, 1983, when the IRS seized $26,006.69 from plaintiffs' account at the Northwestern State Bank of Tracy, Minnesota (Tracy seizure). Both seizures were taken in order to satisfy plaintiffs' tax obligations.

As to the Marshall seizure, the facts relevant thereto were fully covered in a suit previously filed in the United States Court of Claims by plaintiffs. The Marshall seizure resulted from a June 12, 1978, United States Tax Court decision which deter-

---

1. Defendant's motion to dismiss is supported by an affidavit and other relevant documentation and, under existing circumstances, is therefore treated as a motion for summary judgment. ·

mined, *inter alia,* that plaintiffs had a tax deficiency for 1973 of $20,667.45. In the Court of Claims suit, a trial judge found that the Marshall seizure, which plaintiffs again challenge in the instant case, was proper and in conformance with all applicable laws and recommended dismissal of plaintiffs' claim. *See Prairie v. United States,* 47 A.F.T.R.2d 999, 1002–1003 (1981). Thereafter, the trial judge's recommendation was adopted by the Court of Claims and plaintiffs' claim attacking the Marshall seizure was dismissed. *Prairie v. United States,* 227 Ct.Cl. 744 (1981).

As to the Tracy seizure, that action by the IRS resulted from plaintiffs' tax deficiencies for the year 1977. On April 4, 1980, plaintiffs filed a petition (Dk. No. 5038–80) with the United States Tax Court for a redetermination of the deficiency in their 1977 federal income tax as proposed by the Commissioner of Internal Revenue. Plaintiffs contended before the Tax Court that they were not liable for the tax in the proposed deficiency because they had already paid the tax. By decision dated April 14, 1982, the Tax Court, in an unpublished determination, Ordered and Decided, *inter alia,* that the deficiency in income tax due from plaintiffs for the taxable year 1977 was $16,091.00. Interest, costs and penalties of $9,915.69 were assessed which raised plaintiffs' tax obligation for 1977 to $26,-006.69. It was this amount to which the Tracy seizure was directed.

As indicated previously, plaintiffs' complaint is not clear as to what they seek to litigate. The court reads plaintiffs' complaint as seeking refunds for the years 1973 and 1977. If plaintiffs are entitled to refunds for those two years, then the 1978 Marshall seizure (1973 tax year) and the 1983 Tracy seizure (1977 tax year) would be improper. Plaintiffs' complaint is only centered on those two seizures. However, it is manifest that these seizures were made pursuant to judicial determinations that the tax deficiencies which justified the seizures were legal and correct. Seizures under such circumstances are authorized procedures. *See* Section 6331 of the 1954 Internal Revenue Code, as amended; *see also*

*G.M. Leasing Corp. v. United States,* 429 U.S. 338, 349–350, 97 S.Ct. 619, 626–627, 50 L.Ed.2d 530 (1977). There is no allegation that the procedural aspects of these seizures were improper or illegal.

The matters about which plaintiffs complain, or could complain about, were the subject of, or could have been the subject of, prior decisions by the Tax Court and the Court of Claims. To the extent that plaintiffs seek tax refunds for the years 1973 and 1977, judicial review of any such claims are barred by the doctrine of *res judicata.* The Tax Court determinations referred to above preclude further consideration of any such claims. *Lyle v. United States,* 2 Cl.Ct. 250, 253 (1983); *Erickson v. United States,* 159 Ct.Cl. 202, 309 F.2d 760 (1962).

Further, the Court of Claims determination that defendant properly levied upon various savings accounts and certificates of deposit held by plaintiffs, *see Prairie v. United States, supra,* 227 Ct.Cl. at 744–745, serves to preclude further consideration of the 1978 Marshall seizure. There is nothing alleged by plaintiffs which indicates that the 1983 Tracy seizure, implementing the 1982 Tax Court tax deficiency determination against plaintiffs, was improper or not otherwise in accordance with applicable law. In any event, the complaint and other papers filed by plaintiffs fail to show in any way, form or matter that the 1983 Tracy seizure was improper or illegal. Indeed, such materials as are available support the presumption that IRS officials acted properly and in good faith in seizing plaintiffs' account at the Northwestern State Bank of Tracy, Minnesota, in order to satisfy plaintiffs' tax obligations as determined by the Tax Court on April 14, 1982. *See Sun Oil Co. v. United States,* 215 Ct.Cl. 716, 746, 572 F.2d 786, 805 (1978). No amount of straining by the court in recognition of plaintiffs' *pro se* status, can generate for plaintiffs a cause of action in this regard. *See Clinton v. United States,* 191 Ct.Cl. 604, 605–606, 423 F.2d 1367, 1367–1368 (1970).

One final word remains to be said in this case. Plaintiffs have shown themselves to

be inveterate *pro se* litigators. This is evident from a reading of *Prairie v. United States,* 47 A.F.T.R.2d 999 (1981), dealing with plaintiffs' litigation efforts for tax years 1966–1976 and *Prairie v. Commissioner,* 469 F.2d 1085 (8th Cir.1972), dealing with plaintiffs' litigation efforts for tax years 1966–1967. This observation does not include unpublished Tax Court determinations, *e.g.,* the April 14, 1982, Tax Court determination for plaintiffs' taxable year of 1977. In this case, plaintiffs seek to relitigate tax matters involving 1973 and 1977. Relitigation of matters previously decided smacks of harassment and misuse of the court's resources. *See Ruderer v. United States,* 210 Ct.Cl. 693, 538 F.2d 348 (1976). Repetitious litigation cannot be tolerated. *See Sterner v. United States,* 2 Cl.Ct. 253, 255 (1983). Plaintiffs are warned that future suits by them to relitigate previously decided matters may result in the award of damages against them or the imposition of other forms of sanctions, *e.g.,* protective orders. *See Sterner v. United States, supra,* 2 Cl.Ct. at 254–255. Merely because plaintiffs are appearing *pro se* in a litigation does not insulate them from sanctions which can include an award of money damages if their conduct is deemed an abuse of the judicial process. *See Wright v. United States,* 728 F.2d 1459 (Fed.Cir.1984) (Bennett, J.).[2]

Plaintiffs seek to recover $52,013.38 in their complaint. It is determined herein that plaintiffs are not entitled to recover any amount. The government wins.

For reasons discussed above, defendant's motion for summary judgment (Motion To Dismiss) is granted, with plaintiffs' complaint to be dismissed.

**2.** The court is mindful that plaintiffs appear *pro se* in their litigating efforts and this Court, and its predecessor, have been most tolerant of their failure to adhere to the procedural rules of the court and of their failure to articulate their claims. *See Prairie v. United States,* 47 A.F.T. R.2d 999, adopted 48 A.F.T.R.2d 5062 (Ct.Cl. 1981). However, it would appear this leniency has only emboldened *pro se* plaintiffs to continue to relitigate decided matters or engage in other abuses of the judicial process. In the future, this court may be less tolerant of *pro se* litigants, if such hospitality is rewarded by relitigation of prior decided matters which serve to tax the resources of the court unnecessarily, or otherwise abuse of the judicial process. There comes a time when the interests of justice and the conservation of judicial energies and resources require that the hospitality and forbearance extended by this court to *pro se* litigants must come to an end. *See Velasquez v. United States,* 2 Cl.Ct. 347, 348 (1983).