**CONTAINER TRANSPORT INTERNATIONAL, INC.**

v.

**The UNITED STATES.**

**No. 549–71.**

United States Court of Claims.

Nov. 10, 1972.

Alan F. Wohlstetter, Washington, D. C., attorney of record, for plaintiff. Denning & Wohlstetter and Ernest H. Land, Washington, D. C., of counsel.

John Charles Ranney, Washington, D. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant. Robert E. Tressel, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge.

The petition in this case (filed on July 20, 1971) seeks recovery of additional freight charges on 35 shipments of household goods moved by plaintiff carrier, Container Transport International, Inc., during 1964 for the Defense Department, under government bills of lading, between this country and overseas points. These same 35 shipments were also the subject of a separate and earlier litigation, Container Transport International, Inc. v. United States, 437 F.2d 1365, 194 Ct.Cl. 320, (1971), in which the court dismissed the petition and held that the carrier was not entitled to recover. The defendant moves in the present case for summary judgment on the ground of res

judicata, asserting that the issues raised in this new petition form part of the same claim as was adjudicated in the 1971 decision. Plaintiff responds that the claims are different. (It is agreed that the issues presented in this case, No. 549–71, were not actually litigated or adjudicated in the prior one, No. 195–67.)

The earlier petition, in No. 195–67, asked for additional compensation for the line-haul transportation of these 35 shipments from origin at Evreaux-Fauville Air Base, France, to the destination shown on the government bills of lading at Lockbourne Air Force Base, Ohio. The question posed and decided was whether the applicable single factor rate for this line-haul transportation was $34.00 per hundredweight, with a minimum weight of 8,000 pounds, or $35.30 per hundredweight, with a minimum weight of 500 pounds per shipment. The ruling was that the $35.30 rate should be applied.

The present petition, in No. 549–71, concerns compensation sought for services performed after these 35 shipments were tendered for delivery at the government-bill-of-lading destination—including storage-in-transit, warehouse handling, delivery from storage-in-transit, diversions, and appliance servicing. The carrier argues that these services are separate and apart from the line-haul transportation from origin to government-bill-of-lading destination, and are not covered by the single factor rate paid for such line-haul transportation but, rather, by the rates for additional or assessorial services set forth in the Military Basic Tender No. 1 published by the Household Goods Forwarders Association of America, Inc.[1]

█ █ The general rule is, of course, that a final decision on the "merits" of a claim bars a subsequent action on that same claim or any part thereof, including issues which were not but could have been raised as part of the claim. See Lawlor v. National Screen Service, 349 U.S. 322, 326–327, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948); Creek Nation v. United States, 168 Ct.Cl. 483, 488 (1964). A plaintiff who splits his claim (or cause of action) and fails to include his entire demand in his first suit will have, as a result, to give up the part on which he fails to sue the first time. See Baird v. United States, 96 U.S. 430, 432, 24 L.Ed. 703 (1877); Nager Electric Co. v. United States, 368 F.2d 847, 855–856, 177 Ct.Cl. 234, 246 (1966).

█ We have also held that, normally, a single claim (or, as it used to be called, "cause of action") arises out of each single, indivisible contract (see Nager Electric Co. v. United States, supra, 368 F.2d at 855–857, 861, 177 Ct.Cl. at 245–249, 254); and that, again normally, in tariff cases the bill of lading is the contract. See Von Der Ahe Van Lines, Inc. v. United States, 358 F.2d 999, 1001, 175 Ct.Cl. 281, 286–287, cert. denied, 385 U.S. 837, 87 S.Ct. 83, 17 L.Ed.2d 70 (1966); Jet Forwarding, Inc. v. United States, 437 F.2d 987, 989, 194 Ct.Cl. 343, 345 (1971). There is no doubt that plaintiff could have presented its current issues in No. 195–67. In Jet Forwarding, Inc. v. United States, supra, a companion to No. 195–67 involving as its main issue a comparable question of volume single factor rates for mass movements of household goods from foreign points to this country, there was presented at least one issue of the type involved in the present case, and that issue was adjudicated. 437 F.2d at 990, 994–995, 194 Ct.Cl. at 348, 355–356.

The modern trend with respect to the defense of former adjudication is to insist, first, that a plaintiff raise his en-

1. The test case of Trans Ocean Van Service v. United States, 426 F.2d 329, 192 Ct.Cl. 75 (1970), involved Military Basic Tender No. 1 and these types of demands for additional compensation. Plaintiff says that, with respect to the 35 shipments, these demands were not included in the earlier petition, No. 195–67, because they were to be governed by the decision in *Trans Ocean*.

tire "claim" in one proceeding, and second, to define "claim" to cover all the claimant's rights against the particular defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. In deciding what factual grouping constitutes a transaction, and what groupings make a series of connected transactions, the tribunal acts pragmatically, giving weight to such considerations as whether the facts are related in time, space, motivation or the like so as to form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. *See* Ashe v. Swenson, 397 U.S. 436, 454–456, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (concurring opinion); F. James, Civil Procedure § 11.10 (1965); Vestal, Res Judicata/Claim Preclusion: Judgment for the Claimant, 62 Nw.U.L.Rev. 357, 359–61, 394, 395 (1967).

On that view, plaintiff should have presented all facets of its demand relating to these 35 shipments in the prior litigation, as it could easily have done. As to each shipment, the transportation and the bill of lading were the same. A single contract of carriage covered all phases of the shipment, and the shipment itself was an integral unit. Before bringing the earlier suit, the carrier knew the defendant's position on both the line-haul charges and the other charges at issue in the current case. There was no obstacle to putting both aspects of the demand in one suit, and that would be the normal expectation for a claimant seeking to recover transportation charges owed it. *See* James, *supra,* § 11.12 at 563–64.

Plaintiff counters, however, that we applied a different rule for tariff cases in Great Northern Ry. Co. v. United States, 312 F.2d 906, 160 Ct.Cl. 225

(1963). A prior decision had entered judgment for the railroad in 1959 for additional line-haul charges. Great Northern Ry. v. United States, Ct.Cl. No. 10–59, order entered July 31, 1959. The later suit sought demurrage compensation for some of the same shipments. The court rejected the Government's defense of former adjudication, saying 312 F.2d at 910, 160 Ct.Cl. at 233:

> Although plaintiff's cause of action for additional line-haul charges in the case formerly adjudged by this court arose out of the same transaction (the bill of lading), the present action is based on bills for demurrage which are separate and distinct from the bills for transportation charges. Before these two cases came to issue in this court, the Government had asserted its deductions from the carrier for transportation charges separately from its deductions for demurrage by separate overpayment notices, and by separate deductions at widely different times. Demurrage charges are no part of the rate charges in effect for transportation of the shipment. Although they may follow the shipment and be collected together with the transportation charges, they are for a distinct and separate service. Krause Brothers Lumber Co. v. Director General, 92 ICC 450–452. In the former case in this court, judgment for plaintiff was entered upon agreement between the parties on an amount in full settlement of all claims asserted for additional transportation charges. No claims for demurrage were there asserted and the prior judgment is not res judicata as to the present case.

Defendant distinguishes this holding on the ground that in *Great Northern* the General Accounting Office made separate audits of, and deductions from, the line-haul and the demurrage charges.[2]

2. Defendant's brief in this case says incorrectly that, in the *Great Northern* situation, "[a]fter the first suit was filed the General Accounting Office conducted a second audit with respect to the demurrage charges and made additional deductions for which plaintiff filed a second petition in the [c]ourt" (emphasis added). However, the findings show (fdg. 29, 160 Ct.Cl. at 254) that the last demurrage deduction was made about five months before the first action was commenced.

Here, in contrast, there was only one credit and one deduction by the GAO; moreover, the demands now made are governed by the same tender, MBT No. 1, as controlled the line-haul rate.

 In our view these differences insofar as they exist (see note 2, *supra*), are not significant. We do not see why it matters, for res judicata purposes, whether the GAO makes one or two audits, or one or more deductions—so long as they all occurred before the first action was begun. But we now disagree with the rule of *Great Northern* where the claimant knows of both types of demand sufficiently before it brings suit. As indicated above, under the "transactional" theory now generally accepted the shipment is the transaction. Putting that together with the rule that the bill of lading is the contract, we now conclude that every demand, if known, arising out of the shipment (as evidenced by the bill of lading) should be covered in one action—and, if that is not done, the plaintiff is and should be barred. So long as the facts are available before suit is begun, it is irrelevant whether the Government's accounting officers have chosen to treat one aspect of the shipment separately, or to make collections or deductions piecemeal at different times.

 On the other hand, the *Great Northern* opinion has been on the books since 1963 and the present plaintiff-carrier can rightfully say that it relied on it, and had a right to rely on it, in splitting up its demands into two separate cases when it first brought suit here in 1967[3]—especially since the *Trans Ocean* litigation would control the subsidiary issues raised in this action (see note 1, *supra*). We feel that the court, in effect, induced plaintiff to take the "splitting" course it followed.

 This is a persuasive reason for applying the *Great Northern* holding in this specific case, but announcing that it is overruled for the future and will not govern any tariff case filed after today. Prospective overruling is permissible in civil litigation, at least as here, where a retroactive application of the new rule would be inequitable, producing injustice or undue hardship. *See* City of Phoenix v. Kolodziejski, 399 U.S. 204, 213–215, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970); Cipriano v. City of Houma, 395 U.S. 701, 706, 89 S.Ct. 1897, 23 L.Ed. 2d 647 (1969); Great Northern Ry. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 363–366, 53 S.Ct. 145, 77 L.Ed. 360 (1932); Schaefer, The Control of "Sunbursts": Techniques of Prospective Overruling, 22 Record of N.Y.C.B.A. 394 (1967). Obviously, in this instance the plaintiff cannot well complain that we are deferring the effective date of *Great Northern*'s interment. Nor can the defendant feel rightly aggrieved since it did not ask us to overturn the precedent, but merely to differentiate it on grounds we find unacceptable. For future cases, however, we shall not follow this part of the *Great Northern* opinion.

The defendant's motion for summary judgment is denied and the case is returned to the trial commissioner for further proceedings.

---

3. The shipments in question did not occur until 1964. *See* 437 F.2d at 1366, 194 Ct.Cl. at 324.