**Jerry Houston STONE**

v.

**The UNITED STATES.**

No. 292–78C.

United States Claims Court.

Jan. 6, 1984.

Ray C. Norvell, Decatur, Ga., for plaintiff.

Lori F. Fischler, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

YOCK, Judge.

This military pay case comes before the Court on defendant's motion and plaintiff's cross-motion for summary judgment. Plaintiff is a former sergeant in the United States Army. After serving an initial three-year enlistment, plaintiff reenlisted in 1969 for an additional six-year term. Upon reenlisting, plaintiff received reenlistment bonuses totaling $3,344.40. Plaintiff failed to serve the full term of his reenlistment and the United States recouped a portion of plaintiff's reenlistment bonuses by setoff against his final pay voucher. Plaintiff now seeks to recover the amount of the bonuses which defendant recouped by setoff and, additionally, seeks to restrain defendant from recouping further amounts of his reenlistment bonuses plus certain amounts allegedly due for excess leave granted the plaintiff prior to his discharge.

For the reasons discussed herein, defendant's motion for summary judgment is granted, plaintiff's motion is denied and the petition is dismissed.

### Background Facts

On December 16, 1966, plaintiff enlisted in the United States Army for a term of three years. On March 25, 1969, after serving a tour of duty in the Republic of Vietnam, plaintiff reenlisted for an additional six-year term. Upon his reenlistment,

plaintiff received a reenlistment bonus of $1,672.20 and, additionally, a variable reenlistment bonus of $1,672.20.

In May 1971, after plaintiff had served two years, one month and seven days of creditable service toward his six-year reenlistment term, civilian authorities arrested plaintiff at Fort Benning, Georgia. A federal grand jury subsequently returned a six-count felony indictment against plaintiff and, following trial, a jury sitting in the Federal District Court for the Middle District of Georgia returned guilty verdicts on each of the six counts. Thereafter, the court sentenced plaintiff to three concurrent terms of life imprisonment plus 32 years. On appeal, the United States Court of Appeals for the Fifth Circuit affirmed plaintiff's conviction. *United States v. Stone,* 472 F.2d 909 (5th Cir.1973).

Following plaintiff's arrest in 1971, the Army halted all pay and allowance payments to plaintiff. The Army did not discharge plaintiff, however, until November 13, 1975.[1] A related case decided by this Court today sheds some light on the reason for defendant's delay in processing plaintiff's discharge. *See Stone v. United States,* 4 Cl.Ct. 250 (Cl.Ct.1984). In that case, plaintiff Jerry H. Stone asserted his entitlement to disability requirement status.[2]

In plaintiff's disability case, the record supports a finding that the Army initiated processing of plaintiff's discharge within 20 days of plaintiff's conviction. Discharge processing was suspended, however, pending the outcome of plaintiff's appeal before the Fifth Circuit. The United States renewed its efforts to discharge plaintiff after learning in October 1973 that the Fifth Circuit had affirmed plaintiff's conviction. Further delay ensued in early 1974 when plaintiff, apparently believing that he was eligible to be retired for disability, request-

ed review of his case by a medical board. Defendant thereafter initiated review of plaintiff's request and sought advisory opinions from the Office of The Judge Advocate General and the Office of the Army Surgeon General. The Judge Advocate General's office concluded on October 1, 1974, that it had no legal objection to processing plaintiff's administrative discharge solely on the basis of his having been convicted by civil authorities. The Office of the Army Surgeon General subsequently concluded on January 2, 1975, that plaintiff's records did not reveal the need for any further consideration of his disability retirement request. Thereafter, an administrative discharge board met on July 24, 1975, and again on September 2, 1975, to consider whether plaintiff should be discharged. The board recommended that plaintiff be discharged, and on November 13, 1975, plaintiff was honorably discharged from the Army.

On the basis of a review of the entire administrative record in plaintiff's disability case, it is clear to this Court that the Army went to great lengths to ensure that plaintiff's request for a medical board was adequately and fully considered. It appears, therefore, that the delay in discharging plaintiff stemmed from an abundance of caution on the part of the United States that plaintiff receive full and fair administrative due process.

Following plaintiff's discharge, the United States Army Finance and Accounting Center (USAFAC) reviewed plaintiff's records for final pay action. The USAFAC determined that plaintiff was entitled to receive back pay amounting to $262.10. The USAFAC also concluded that plaintiff was indebted to the United States in the amount of some $2,010.22 for the proportionate share of his reenlistment bonuses attributable to the period of plaintiff's six-year reenlistment term which he failed to

---

1. Plaintiff was discharged pursuant to Army Regulation 635–206, which provides for administrative discharge of personnel who are convicted by civilian authorities of crimes for which the maximum penalty under the Uniform Code of Military Justice is death or imprisonment exceeding one year.

2. In plaintiff's disability case, this Court today holds that the doctrines of laches and *res judicata* preclude him from maintaining his action in this Court.

serve.[3] Thereafter, the United States recouped $240.99 by setoff against plaintiff's final pay allotment of $262.10. The Army subsequently referred the matter to the USAFAC Collection Division for collection action for the remainder of the $1,769.23 alleged due, and the Collection Division sent several demand letters to plaintiff. On April 11, 1977, plaintiff notified the USAFAC by mailgram that he was serving a sentence of life imprisonment in a federal prison. After receiving plaintiff's mailgram, the Collection Division concluded that plaintiff's debt was uncollectible and halted further collection action.

In order to understand the nature of plaintiff's present claim, it is necessary to consider it in the context of plaintiff's other actions before the United States Court of Claims. On June 20, 1978, plaintiff, acting *pro se,* commenced an action in the Court of Claims seeking to recover back pay and allowances for the period beginning May 2, 1971, the date of plaintiff's incarceration, and extending through November 13, 1975, the date of plaintiff's discharge from the United States Army. In that action, plaintiff asserted that the United States Army had carried him on its active payroll roster until his discharge on November 13, 1975. Plaintiff correctly alleged that the Army had refused to pay him his monthly pay allotment after his arrest. He asserted, therefore, that he was entitled to his "basic pay as received prior to May 2, 1971 for the period May 2, 1971 through November 13, 1975." Plaintiff additionally sought $100,000 in punitive damages and $150,000 in compensatory damages for defendant's alleged "negligence" in failing to compensate plaintiff for the four and one-half year period which elapsed between plaintiff's incarceration and his discharge from the United States Army.

---

**3.** *See* 37 U.S.C. § 308(a)(2),(d) (Supp. V 1981) (member of armed forces who, because of misconduct, does not complete term of enlistment shall refund pro rata share of any reenlistment bonus paid).

USAFAC determined that plaintiff was indebted to the United States in the amount of $2,010.22. This amount represented:

Upon the parties' cross-motions for summary judgment, the Court of Claims awarded summary judgment in favor of the United States. The Court concluded:

The Army's decision [to terminate plaintiff's pay allotment] comports not only with the statute [37 U.S.C. § 503(a) ] and Defense Department regulations, but also with decisions of this court. * * *

Due to his own serious misconduct, plaintiff was confined by civil authorities and was unavailable to perform his duties for the Army. His absence could not be and cannot be excused as unavoidable. We therefore hold that plaintiff is precluded by 37 U.S.C. § 503(a) from prevailing on his claim for back pay and allowances.

*Stone v. United States,* 219 Ct.Cl. 604, 607, 618 F.2d 119 (1979) (footnote omitted); *see* 37 U.S.C. § 503(a) (Supp. V 1981) (member of armed forces absent without leave forfeits all pay and allowances unless absence is excused or unavoidable). The Court of Claims dismissed plaintiff's petition on January 26, 1979, and on March 2, 1979, the Court summarily denied plaintiff's motion for reconsideration.

On October 6, 1981, plaintiff, this time represented by counsel, filed with the Court of Claims a document entitled "Motion for New Trial and Complaint for Benefits and Allowances." It is this complaint for benefits and allowances that forms the basis of the present action. The complaint set forth, in essence, a claim that the Army had improperly set off $240.99 from plaintiff's final pay voucher and was continuing to seek collection on $1,769.23 allegedly due. In the motion which accompanied the complaint, plaintiff additionally sought relief from the earlier order of the Court which granted the defendant summary judgment. As grounds for his motion, plaintiff assert-

(a) $1,086.11 representing the pro rata share of plaintiff's reenlistment bonus attributable to three years, 10 months and 23 days time not served;

(b) $500.11 representing the pro rata share of plaintiff's variable reenlistment bonus attributable to three years, 10 months and 23 days time not served;

(c) $424.00 attributable to excess leave.

ed that "newly discovered evidence" established plaintiff's entitlement to relief on his claim for back pay.[4]

On March 12, 1982, the Court of Claims again denied plaintiff's motion. Concluding that the motion was properly characterized as a motion for a new trial, the Court observed that Court of Claims Rule 152 required that such a motion must be filed within one year of entry of judgment. More than two and one-half years had elapsed since final judgment had entered against plaintiff, however, and the Court held that plaintiff's motion was therefore untimely.

In its opposition to plaintiff's motion for relief from judgment, the Government inexplicably failed to address plaintiff's complaint for benefits and allowances. As a result, the Court of Claims did not reach the merits of plaintiff's claim, and it remained on the Court's docket. On March 16, 1982, plaintiff's complaint was assigned to the Trial Division of the Court of Claims, and on June 17, 1982, the defendant filed the motion for summary judgment that presently is under consideration. Thereafter, on September 16, 1982, plaintiff filed a single cross-motion in which he sought summary judgment in both his present benefits and allowances case (Docket 292–78) and in his disability retirement case (Docket 580–81C). Pursuant to the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25, 57–58, both of plaintiff's cases were transferred to the United States Claims Court on October 1, 1982.

### Discussion

In his petition before this Court, plaintiff asserts that defendant's "claim [against plaintiff for pro rata reimbursement of plaintiff's reenlistment bonuses] is unjust and * * * defendant is not entitled to collect said amounts." Plaintiff further argues that the United States was negligent in failing to recognize that plaintiff suffered from a psychological disability and that defendant's negligence was the proximate cause of plaintiff's inability to complete his term of enlistment.[5] It is plaintiff's position, therefore, that he is entitled to recover from defendant all sums which defendant set off against plaintiff's final pay voucher. Additionally, plaintiff seeks to restrain defendant from asserting against him any further claims which arose out of the circumstances regarding the reenlistment and variable reenlistment bonuses which plaintiff received in 1969, and the excess leave granted the plaintiff prior to his discharge.

Defendant argues that plaintiff's claim is barred by the doctrine of *res judicata*. Plaintiff's present claim for benefits and allowances, defendant contends, was one which plaintiff could have brought, and should have brought, when plaintiff filed his action for back pay with the Court of Claims in 1978. Defendant also argues in the alternative that the Army was legally entitled to offset its claim against plaintiff's final pay voucher because plaintiff's failure to complete his enlistment term was "voluntary and due to his [own] misconduct." Defendant further argues that this Court is without jurisdiction to grant plaintiff the injunctive relief that he seeks.

For the reasons discussed below, the Court holds that plaintiff's claim is *res judi-*

---

**4.** The "newly discovered evidence" was, in reality, plaintiff's medical records which plaintiff had sought to discover in the course of the original proceeding. In his motion for a new trial, plaintiff asserted that his medical records would establish that he was not criminally responsible for the misconduct which led to his incarceration and, therefore, his absence from duty was excused as unavoidable and he was entitled to judgment on his back pay claim.

**5.** To the extent that plaintiff is alleging a claim of negligence, such a claim sounds in tort and

does not fall within the jurisdiction of this Court. 28 U.S.C. § 1491 (1976). This Court, and its predecessor, has repeatedly recognized this statutory limitation upon its jurisdiction. *See, e.g., Hargrove v. United States* 1 Cl.Ct. 228, 230 (1982); *Somali Development Bank v. United States,* 205 Ct.Cl. 741, 751–52, 508 F.2d 817, 822 (1974); *Algonac Mfg. Co. v. United States,* 192 Ct.Cl. 649, 663, 428 F.2d 1241, 1249 (1970); *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 609, 372 F.2d 1002, 1008 (1967).

*cata* and defendant is entitled to judgment as a matter of law.

■ The doctrine of *res judicata* dictates that when a court of competent jurisdiction has rendered a final judgment on the merits of a case, that judgment operates as an absolute bar to additional claims based upon the same cause of action. *See, e.g., Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979); *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); *see also Sterner v. United States,* 2 Cl.Ct. 253, 254 (1983); *Red Lake Band v. United States,* 229 Ct.Cl. ——, 667 F.2d 73, 74 (1981). A grant of summary judgment clearly is an adjudication on the merits of a case. A court, therefore, may hold that a party's claim is barred by *res judicata* when prior litigation resulted in summary judgment which disposed of the same claim between the same, or sufficiently related, parties. *Stokke v. Southern Pac. Co.,* 169 F.2d 42, 43 (10th Cir.1948).

The rationale underlying the doctrine of *res judicata* "rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations." *Commissioner v. Sunnen, supra,* 333 U.S. at 597, 68 S.Ct. at 719. *Res judicata,* therefore, encourages parties to rely upon judicial decisions, bars vexatious litigation and enables the courts to turn their attention to the resolution of other disputes. *Brown v. Felsen, supra,* 442 U.S. at 131, 99 S.Ct. at 2209; *see also Schuster v. United States,* 1 Cl.Ct. 708, 710 (1983); *Bander v. United States,* 161 Ct.Cl. 475, 481 (1963) (per curiam).

■ *Res judicata* operates to bar not only all claims which the parties actually raised in prior litigation with each other, but also all claims which were "previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen, supra,* 442 U.S. at 131, 99 S.Ct. at 2209; *see also Hasson v. United States,* 220 Ct.Cl. 615, 618 F.2d 121 (1979). A plaintiff who splits his claims and does not raise his entire demand in the first action, therefore, may not later seek to relitigate the claim. *Container Transport Int'l, Inc. v. United States,* 199 Ct.Cl. 713, 717, 468 F.2d 926, 928 (1972).

In *Container Transport Int'l, Inc. v. United States, supra,* the Court of Claims discussed the concept of the "same claim," noting:

The modern trend with respect to [*res judicata* ] is to insist, first, that a plaintiff raise his entire "claim" in one proceeding, and second, to define "claim" to cover all the claimant's rights against the particular defendant with respect to all or any part of the transaction * * * out of which the action arose. In deciding what factual grouping constitutes a transaction, and what groupings make a series of connected transactions, the tribunal acts pragmatically, giving weight to such considerations as whether the facts are related in time, space, motivation or the like so as to form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Id.* at 718, 468 F.2d at 928–29; *see also Roscoe-Ajax Construction Co. v. United States,* 204 Ct.Cl. 726, 742–43 (1974).

■ Plaintiff's present claim is one which plaintiff could and should have raised in his prior action. The order of the Court of Claims granting defendant summary judgment on plaintiff's 1978 claim, therefore, operates as a total bar to the present action. *See Stokke v. Southern Pac. Co., supra,* 169 F.2d at 43. *See generally* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2735, at 445 (2d ed. 1983). Plaintiff's 1978 action for back pay and allowances and his present claim for "benefits and allowances" are, essentially, the same claim within the meaning of the test set forth by the Court of Claims in *Container Transport.* Both claims which plaintiff has asserted against the United States in the Court of Claims, and now in this Court, relate to plaintiff's rights against the United States with respect to plaintiff's entitlement to receive pay and allowances and to retain such allowances in the form of reen-

 

listment bonuses after his arrest and incarceration.

Moreover, "if the claimant, before filing its first suit, is in possession of all the facts on which its second suit is based, the splitting of the claims into multiple suits is fatal to maintenance of the later-filed action." *Everett Plywood Corp. v. United States,* 206 Ct.Cl. 244, 252, 512 F.2d 1082, 1087 (1975). At the time plaintiff filed his 1978 action for back pay and allowances, he possessed all relevant facts relating to the defendant's claim that he was obligated to refund a percentage of his reenlistment bonuses and certain excess leave. In 1975, the Army determined that plaintiff was indebted to the United States in the total amount of $2,010.22, and it set off $240.99 of plaintiff's total indebtedness against his final pay voucher. Thereafter, the Army mailed plaintiff several demand letters for the remaining $1,769.23 that the Army determined was due. Plaintiff clearly received these letters because he subsequently informed the USAFAC Collection Center by mailgram that he was serving a term of life imprisonment in a federal correctional institution, and thus (by implication) could not readily repay those amounts. After receiving this communication from the plaintiff, the Army terminated its collection efforts believing that the remaining debt would prove uncollectible.

Plaintiff's present claim, initiated in 1981, was an integral part of his 1978 claim against the United States. Accordingly, plaintiff could have raised—and should have raised—the claim in 1978. The reasons for plaintiff's failure to do so are immaterial, for "it is no excuse that he * * * did not think of them." *Hasson v. United States, supra,* 220 Ct.Cl. at 616. Therefore, the January 26, 1979 order of the Court of Claims granting summary judgment in favor of defendant operates to bar plaintiff's present action. Plaintiff is not entitled to recover from the Government any benefits and allowances allegedly due in his complaint of October 6, 1981.

## CONCLUSION

For the reasons discussed herein, defendant's motion for summary judgment is granted, plaintiff's cross-motion is denied and the complaint is dismissed.