### Rene E. LINS

v.

### The UNITED STATES.

### No. 522–82C.

United States Claims Court.

March 22, 1984.

Rene E. Lins, Zurich, Switzerland, pro se.

Allen C. Peters, Washington, D.C., with whom was Acting Asst. Atty. Gen., Richard K. Willard, Washington, D.C., for defendant.

## OPINION

YOCK, Judge.

This case involves claims for damages arising out of allegedly fraudulent activities of United States Treasury Department officials regarding the plaintiff's attempted redemption of a $1,000,000 U.S. Treasury Bill. In a prior case involving the same parties, the U.S. Court of Claims determined that the plaintiff's suit concerning the same Treasury bill was barred by the statute of limitations. *Lins v. United States*, 231 Ct.Cl. ——, 688 F.2d 784 (1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 788, 74 L.Ed.2d 995 (1983).

In this action, the plaintiff contends that the defendant fraudulently misled him into complying with unnecessary regulations to establish his ownership of the Treasury bill, which misrepresentation also resulted in his filing the prior action too late to avoid the Government's statute of limitations defense. The defendant in this action filed a motion to dismiss and argues that the claim is barred by the doctrine of *res judicata*. In the alternative, the defendant asserts that even if not barred by *res judicata*, the claim sounds in tort and, therefore, the U.S. Claims Court lacks jurisdiction. As indicated in the following discussion, the Court grants the defendant's motion to dismiss.

### I.

The previous case involving the same parties to this action began in February 1981, when the plaintiff sued the Government (U.S. Treasury Department) in the United States District Court for the District of Columbia for a declaratory judgment that he owned the $1,000,000 Treasury bill. In September 1981, the District Court transferred the case to the U.S. Court of Claims under 28 U.S.C. § 1406(c) (1976), because the plaintiff was seeking money damages in an amount beyond the District Court's jurisdiction. 28 U.S.C. § 1346(a)(2) (Supp. IV 1980).

The $1,000,000 U.S. Treasury Bill at issue in the previous case was a bearer bill redeemable on July 30, 1974. It is one of a number of securities which disappeared from the vaults of Chase Manhattan Bank (Chase) in New York during November 1973. Chase notified the Treasury Department, which issued warning notices about the bills and also issued replacements to Chase. In return for the replacements, Chase had to acquire indemnification coverage for the United States in case the Treasury had to redeem both the original and replacement bills. *See* 31 U.S.C. § 738a(b) (1976); 31 C.F.R. §§ 306.110, 309.12(a) (1981).

The plaintiff, appearing *pro se* in the previous case as now, is or was a Swiss banker who acquired possession of the bill in November or December 1973 in Switzerland. In December, the plaintiff checked with the Swiss office of Merrill, Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) to see if the bill was valid. Merrill Lynch gave only a "neutral" answer, saying it had to check with its protection service in New York. In January 1974, Merrill Lynch told the plaintiff the bill was stolen.

In July 1974, when the bill became due, the plaintiff was in Thailand, fighting extradition proceedings to Switzerland. Through various agents, the last of which was Irving Trust Company, the plaintiff eventually presented the bill to the Federal Reserve Bank of New York on September 5, 1974.

United States securities issued for a term of one year or less are overdue if presented a month or more after maturity. 31 C.F.R. § 306.25(b)(1) (1981). Section 306.25(b) provides that: "If a bearer security * * * is presented and surrendered for redemption after it has become overdue, the Secretary of the Treasury will ordinarily require satisfactory proof of ownership. (Form PD 1071 may be used)." Accordingly, the Federal Reserve Bank refused to redeem the bill until Form PD 1071 was completed. An employee of Irving Trust took the bill and the form back to the office, intending to complete the form and present the bill again shortly. The next day, however, the Federal Bureau of Investigation, which had discovered the bill was stolen, subpoenaed it from Irving Trust.

A long investigation followed to determine how the bill had gotten to Switzerland and whether the plaintiff had received stolen goods. In 1978, the Swiss prosecutor decided there was not enough evidence to prosecute the plaintiff. In February 1979, the plaintiff finally presented his Form PD 1071, known also as a certificate of ownership. This form requires proof that the bearer acquired the bill for value, before the maturity date, and without notice of any defect in title. The Treasury Department requires this proof to avoid the possi-

bility of double liability, because an insurer might not indemnify it if the United States redeems an overdue bond from an illegitimate bearer.

In a February 26, 1980 letter to the plaintiff, the Treasury refused again to pay the plaintiff. It said that the plaintiff's certificate of ownership showed he acquired the bill before maturity, but that "it does not show firmly and unequivocally that you purchased the bill in good faith, without any notice of defect in title or that you paid value for the bill." The letter went on to state in pertinent part:

According to Departmental regulations, a person claiming ownership to an overdue security must prove that he is a holder in due course before payment may be made. A holder in due course is one who acquires the security in good faith, before maturity for value, without notice of any defect in title. The degree of evidence necessary to establish such a claim with the Department of the Treasury is, clear and conclusive evidence that firmly establishes proper title and leaves no reasonable questions concerning the propriety of the security's acquisition. In lieu of this type of evidence, the Department will recognize a court decree that affirmatively establishes rights and entitlement to the security in question. This decree must be from a court having jurisdiction over the subject matter and the affected parties.

\* \* \* \* \* \*

Before further consideration can be given to your claim you must submit satisfactory evidence of purchase of the bill for value, in good faith, without any notice of defect in title. If you decide to pursue your claim further with the Department of the Treasury rather than obtaining a valid court decree, the evidence you submit must be sufficiently strong and independent to remove any reasonable questions concerning your status as a holder in due course. As we do not know the type of evidence you might have, it is difficult for us to advise

you whether the information is sufficient for use in the case.

It is clear that both before and after the plaintiff presented his certificate of ownership, the Treasury indicated that a valid court decree establishing the plaintiff's ownership would be accepted in lieu of a proper certificate of ownership.

As indicated earlier, plaintiff commenced his action in the previous suit on February 25, 1981. In his petition before the Court of Claims, the plaintiff sought the $1,000,000 face value of the bill, interest at 20 percent compounded annually from September 5, 1974, and consequential damages of up to $10,000,000 for defendant's negligence and failure to conform to its own regulations.

On February 26, 1982, the Government filed its motion for summary judgment alleging that plaintiff's claim was barred by the statute of limitations and by laches. In its decision of September 8, 1982, the Court of Claims granted the defendant's motion on the basis that plaintiff's claim was barred by the Court's statute of limitations. 28 U.S.C. § 2501 (1976). The Court found that the plaintiff's claim had accrued on September 5, 1974 when he initially presented the bill for payment to the Federal Reserve Bank of New York, and that he did not bring suit on the Government's failure to pay until February 25, 1981—some 6½ years later. *Lins v. United States, supra,* 688 F.2d at 787.

In granting the defendant's motion, the Court of Claims rejected several defenses to the application of the statute of limitations that were raised by plaintiff. The Court noted that when plaintiff had presented the Treasury bill for payment through Irving Trust, he had done all he was required to do to establish entitlement to payment, and his claim accrued. *Lins, supra,* 688 F.2d at 787. In finding that plaintiff's pursuit of permissive administrative remedies beyond the presentation of the bill itself did not toll the statute of limitations, the Court stated the following:

Presentation of the certificate of ownership for an overdue bill is not an ele-

ment of accrual of the claim for payment of the bill under the statute of limitations. The requirement is merely an administrative procedure designed to protect the Treasury from double liability. The regulation requiring the certificate so indicates. It states: "[T]he Secretary ... will ordinarily require satisfactory proof of ownership." 31 C.F.R. § 306.-25(b). It also authorizes the Secretary to waive the requirement. *Id.* § 306.126.

Throughout the plaintiff's protracted attempts to obtain payment of the bill, the Treasury took the position that instead of supplying the certificate, the plaintiff could file suit and thereby establish his right to payment. Filing the certificate pursuant to the regulations was a permissive administrative remedy which did not affect the creation of the plaintiff's rights.

*Id.* at 787–88. The Court also rejected plaintiff's arguments that his right to payment did not mature until a Swiss prosecutor dropped a criminal investigation of him, that Irving Trust never surrendered the bill, that the criminal investigation of him tolled the statute of limitations, that the Government fraudulently concealed relevant facts from him because it did not tell him of an indemnity bond on the Treasury bill, and that the Government acknowledged the debt by a letter dated February 26, 1980. *Id.* at 788–89.

On October 12, 1982, the plaintiff filed the present action in this Court seeking $1,000,000 in damages to compensate for the equivalent value of the Treasury bill which the Court of Claims barred from suit, interest of 20 percent from September 5, 1974 to date amounting to approximately $2,500,000, and some $13,100,000 in damages directly caused by the defendant's fraudulent and illegal conduct in refusing to redeem the bill when presented. Plaintiff alleges in his present complaint that defendant fraudulently concealed from plaintiff "that his right to payment was established when he presented the bill, because this was all he had to do to redeem the bill." He further alleges that defendant fraudulently concealed from him that

he did not have to comply with defendant's request for evidence on ownership of the Treasury bill before filing suit in court.

In lieu of filing an answer in the present suit, the defendant filed its motion to dismiss alleging that the plaintiff's action is barred by the doctrine of *res judicata*, or in the alternative if not so barred, is a suit sounding in tort over which this Court has no jurisdiction.

## II.

The defendant in its Motion to Dismiss asserts that the plaintiff's claims in the present action are barred from further litigation in this Court because: (1) the claims in this action are the very same basic matters litigated in the previous action; (2) to the extent they are not the same basic matters previously litigated, they are matters that could have and should have been raised or defended against in the previous litigation; and (3) in any event, even on the merits, the basic documentation available in the record indicates no fraudulent misrepresentation on the part of U.S. Treasury Department officials.

The plaintiff counters the defendant's motion by denying that his present claims are the same basic claims as litigated before, or that the present claims are but additional claims and defenses that should have been raised in the previous case. He argues that he could not know until the Court of Claims decided the point that his claim had legally accrued on September 5, 1974.

For the reasons discussed below, the Court holds that plaintiff's claim is *res judicata* and defendant is entitled to judgment as a matter of law.

 The doctrine of *res judicata* dictates that when a court of competent jurisdiction has rendered a final judgment on the merits of a case, that judgment operates as an absolute bar to additional claims based upon the same cause of action. *See, e.g., Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979);

*Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); *see also Stone v. United States,* 4 Cl.Ct. 264 (1984); *Bayshore Resources Co. v. United States,* 2 Cl.Ct. 625, 637 (1983); *Sterner v. United States,* 2 Cl.Ct. 253, 254 (1983); *Red Lake Band v. United States,* 229 Ct.Cl. 272, 274, 667 F.2d 73, 74 (1981). A grant of summary judgment clearly is an adjudication on the merits of a case. A court, therefore, may hold that a party's claim is barred by *res judicata* when prior litigation resulted in summary judgment which disposed of the same claim between the same, or sufficiently related, parties. *Schuster v. United States,* 1 Cl.Ct. 708, 710, *aff'd,* 723 F.2d 69 (Fed.Cir.1983); *Stokke v. Southern Pac. Co.,* 169 F.2d 42, 43 (10th Cir.1948).

The rationale underlying the doctrine of *res judicata* "rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations." *Commissioner v. Sunnen, supra,* 333 U.S. at 597, 68 S.Ct. at 719. *Res judicata,* therefore, encourages parties to rely upon judicial decisions, bars vexatious litigation and enables the courts to turn their attention to the resolution of other disputes. *Brown v. Felsen, supra,* 442 U.S. at 131, 99 S.Ct. at 2209, *see also Schuster v. United States, supra,* 1 Cl.Ct. at 710; *Bander v. United States,* 161 Ct.Cl. 475, 481 (1963) (per curiam).

*Res judicata* operates to bar not only all claims which the parties actually raised in prior litigation with each other, but also all claims which were "previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen, supra,* 442 U.S. at 131, 99 S.Ct. at 2209; *see also Hasson v. United States,* 220 Ct.Cl. 615, 618 F.2d 121 (1979). A plaintiff must generally seek *all* of the relief to which he believes himself entitled in the first suit, and the fact that different or additional relief is sought in a second suit is of no moment. *See Nash County Board of Education v. Biltmore Co.,* 640 F.2d 484, 493 (4th Cir.), *cert. denied,* 454 U.S.

878, 102 S.Ct. 359, 70 L.Ed.2d 188 (1981); *Boruski v. United States,* 493 F.2d 301, 304 (2d Cir.1974), *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2419, 44 L.Ed.2d 681 (1975). A party's failure to assert all of the legal theories upon which relief may be based does not deprive the adjudication of its effect as *res judicata. See Hildebrand v. Dart Industries,* 640 F.2d 289, 291 (10th Cir.1981); *Small Business Administration v. Taubman,* 459 F.2d 991, 992 (9th Cir.1972). In addition, a plaintiff who splits his claims and does not raise his entire demand in the first action may not later seek to relitigate the claim. *Container Transport Int'l, Inc. v. United States,* 199 Ct.Cl. 713, 717, 468 F.2d 926, 928 (1972).

In *Container Transport Int'l, Inc. v. United States, supra,* the Court of Claims discussed the concept of the "same claim," noting:

> The modern trend with respect to [*res judicata*] is to insist, first, that a plaintiff raise his entire "claim" in one proceeding, and second, to define "claim" to cover all the claimant's rights against the particular defendant with respect to all or any part of the transaction * * * out of which the action arose. In deciding what factual grouping constitutes a transaction, and what groupings make a series of connected transactions, the tribunal acts pragmatically, giving weight to such considerations as whether the facts are related in time, space, motivation or the like so as to form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Id.* at 718, 468 F.2d at 928–29; *see also Roscoe-Ajax Construction Co. v. United States,* 204 Ct.Cl. 726, 742–43, 499 F.2d 639, 646–47 (1974).

In this case, the parties are the same as in the previous action. Thus, the only questions remaining in determining whether *res judicata* serves as a bar to plaintiff's claims are whether the claims presented in this case are the same as

those adjudicated in the previous one, whether they are "part of" the claims previously litigated, or whether they include issues that were not but could have been raised as part of the prior action. *See Container Transport Int'l, Inc. v. United States, supra.* Upon careful analysis of the issues and claims presented in this case, in contrast to the issues and claims presented in the previous litigation, it is concluded that the plaintiff is seeking to relitigate the same basic issues and claims as before.

In the previous case, plaintiff sought to redeem his $1,000,000 Treasury bill as a holder in due course, sought damages in the form of interest lost at 20 percent compounded annually since September 5, 1974, and sought some $10,000,000 in consequential damages in compensation for the defendant's negligence and its failure to conform to normal business standards and its own rules and regultions. In this case, the plaintiff seeks $1,000,000 in damages as "the equivalent of the face value of [the] Treasury bill" which enforceability the plaintiff lost by the decision in the previous case, seeks as damages interest lost at the rate of 20 percent compounded annually from September 5, 1974, in the amount of some $2,500,000, and seeks some $13,100,000 in consequential damages in compensation for the defendant's fraudulent and otherwise illegal conduct.

It is clear from merely restating the plaintiff's claims in both cases that they involve basically the same issues. In both cases the plaintiff wanted $1,000,000 in redemption of his bill, or as the equivalent of the face value of his bill. In both cases the plaintiff wanted interest at 20 percent compounded annually from September 5, 1974. In both cases the plaintiff wanted compensatory damages of some $10,000,000 plus for negligence or fraudulent action on the part of U.S. Treasury Department officials. The essence of plaintiff's claims remains the same, he wants $1,000,000 recovery on his bill, interest lost, and consequential damages for the defendant's negligence or fraudulent acts. Plaintiff had a shot at all of these issues in his first case and cannot

now avoid the bar of *res judicata* by simply coloring the issues with a slightly different hue.

Even if this Court were to determine that the issues were not basically the same, the plaintiff would still not avoid the bar of *res judicata* because all of the issues involved in this suit could have and should have been raised in the previous case. For example, when the defendant moved for summary judgment in the previous case on the ground that plaintiff's claim was barred by the statute of limitations, plaintiff at that point had to come forward with any and all defenses he had available to avoid the bar. Plaintiff did argue six defenses which were rejected by the Court of Claims, but he failed to argue one that he now presses in this action. Plaintiff alleges in this action that Treasury Department officials fraudulently misled him into complying with unnecessary regulations to establish his ownership of the Treasury bill, which misrepresentation also resulted in his filing his prior action too late to avoid the Government's statute of limitations defense. Plaintiff cannot save what may be a good defense for a later battle. Every litigant gets one bite out of the judicial apple on all claims arising out of the same transaction. *Container Transport Int'l, Inc. v. United States, supra,* 199 Ct.Cl. at 718, 468 F.2d at 928–29. This is true even though the litigant may have been ignorant of all his defenses and claims. *See Braude v. United States,* 218 Ct.Cl. 270, 273, 585 F.2d 1049, 1051 (1978); *Gilmore v. United States,* 228 Ct.Cl. 829, 832 (1981). This is also true even though the plaintiff was proceeding in this and in the previous case *pro se. Prairie v. United States,* 4 Cl.Ct. 697 at 699 (1984). The fact that the plaintiff may not be well advised legally is also immaterial. *Hasson v. United States, supra,* 220 Ct.Cl. at 616, 618 F.2d 121.

From the above, it is clear that plaintiff could have and should have brought all his claims and defenses involving his attempted redemption of the Treasury bill at issue

to the previous court's attention. *Res judicata* thus bars the instant action.

Finally, it should also be mentioned that even if *res judicata* were not held to bar this action, the plaintiff would not be successful on the merits of this action. The documents the parties placed into the record in these cases make it very clear that there was no fraudulent misrepresentation on the part of Treasury Department officials. Plaintiff admits in its complaint in this action that the Treasury in an undated letter received by the plaintiff on January 18, 1979, stated in pertinent part:

> In our letter of February 18, 1976, you were advised that payment of the bill could not be made, absent a judicial determination of its ownership. In light of the regulations and the circumstances of the case, it is our view that such a requirement is not unreasonable. Therefore, since no such evidence has been presented, we are not in a position to consider making payment at this time.

Plaintiff also admits in his complaint that he was advised by the Treasury in a letter dated April 24, 1979 that payment of the bill could not be made absent a judicial determination of its ownership or other appropriate proof. Plaintiff further admits in his complaint that the Treasury advised him by letter dated February 26, 1980 (pertinent parts already quoted herein) that the Treasury would recognize a court decree that affirmatively established his rights and entitlement to the security in question. It is very clear that Treasury Department officials went out of their way innumerable times to advise him on what was necessary to redeem the bill, from the point when plaintiff initially presented the bill on September 5, 1974 to the point when the plaintiff commenced action in the District Court on February 25, 1981. There was no fraudulent misrepresentation on the part of Treasury Department officials in this connection.

The Treasury Department was under no obligation to advise the plaintiff to get competent legal advice. Plaintiff apparently did not seek or receive such, or in any event, he simply waited too long to bring action on the bill.

In view of what is decided above, the Court need not reach the defendant's argument in the alternative that plaintiff's complaint in this action sounds in tort and thus is beyond the jurisdiction of this Court. In addition, all pending procedural motions are hereby denied.

*Res judicata* bars the plaintiff's current action.

## CONCLUSION

For the reasons discussed herein, defendant's motion to dismiss is granted and the complaint is to be dismissed.