**Delbert H. REIDT, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 719–87 C.

United States Claims Court.

Nov. 24, 1987.

ORDER

NAPIER, Judge.

This case comes before the Court on plaintiff's *pro se* "Claim for correction of military records, 28 USC 1491, and recovery of deprived disability retirement pay * * *" filed November 24, 1987.

As explained more fully below, plaintiff's suit is hereby dismissed as plaintiff's claims are precluded under the doctrine of *res judicata.*

*Facts*

On August 27, 1985, plaintiff filed a complaint in the United States Claims Court seeking retroactive disability retirement and damages in excess of $1,100,000 for himself and his children.

In an unpublished memorandum of decision filed March 6, 1986, Judge Kenneth R. Harkins denied plaintiff's motion for summary judgment and granted defendant's cross-motion for summary judgment stating: "It is clear that this court does not have jurisdiction of plaintiff's claims because the statute of limitations long since has run. *Soriano v. United States,* 352 U.S. 270, 273–74, 77 S.Ct. 269, 271–72, 1 L.Ed.2d 306 (1957); *Friedman v. United States,* 159 Ct.Cl. 1, 310 F.2d 381, *cert. denied,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963)."

Because the Court is dismissing the above captioned case on the basis of *res judicata,* a review of the facts in plaintiff's prior suit is necessary. For purposes of convenience that section of Judge Harkins' opinion entitled "FACTS" is quoted as follows:

Plaintiff enlisted in the United States Coast Guard on December 11, 1951, for a period of 3 years. He reported to the Coast Guard Cutter Falgout, based in Seattle, Washington, on April 23, 1952, and on May 12, 1952, he failed to return from authorized leave. He turned himself in to the United States Public Health Service Hospital in Seattle on May 13, 1952, after the Falgout had gone to sea.

In the hospital, plaintiff underwent a psychiatric evaluation. On May 16, 1952,

he was diagnosed as suffering from a personality disorder of the schizoid type, and it was determined plaintiff was not fit for duty.

On May 16, 1952, a Board of Medical Survey recommended that he be discharged in accordance with applicable Coast Guard regulations. It was explained to plaintiff that the Board of Medical Survey had made the following findings: (1) that he was suffering from a personality defect, namely a schizoid personality; (2) that it was believed that this condition existed prior to his entry on duty; and (3) that it was neither incurred in nor aggravated by his service. As a result of these findings, plaintiff was told he would not be entitled to severance pay or disability retirement pay. Plaintiff was told that he could challenge the findings of the Board of Medical Survey by invoking his right to a hearing before a Physical Evaluation Board. Plaintiff signed a waiver of that right, and declined to submit any statement in rebuttal to the findings of the Board of Medical Survey.

On July 7, 1952, plaintiff was issued a general discharge for the convenience of the Government. He received neither disability retirement pay nor severance pay as part of that discharge.

On December 10, 1980, plaintiff submitted a petition to the DOTBCMR in which he asked that his service records be corrected to reflect that he had been discharged on medical grounds with an honorable discharge, with a service connected disability, and that he suffered from a phobic condition known as agoraphobia. Plaintiff asserted that he had no knowledge of agoraphobia until approximately March 1, 1980, and that this phobic condition was traceable to an incident at the recreation hall during his Coast Guard training when a 25 lb. can of sand had fallen on his head. Plaintiff's application included two letters from a psychologist, Donald L. Tasto, Ph.D., that indicated that plaintiff did, indeed, suffer from agoraphobia, and that this condition had been precipitated by an accident he experienced while in the Coast Guard.

Plaintiff also submitted literature on agoraphobia, and the affidavit of a former shipmate, which stated plaintiff had received a blow to the head in January or February 1952 and rendered unconscious.

On June 5, 1981, the DOTBCMR denied plaintiff's request for relief. The board noted that in cases involving mental disorders, the examination should be conducted by a medical doctor who is a specialist in psychiatry, and that plaintiff in 1952 had been examined by a psychiatrist who diagnosed he had a schizoid personality that existed at the time of enlistment. Since Dr. Tasto was a psychologist, rather than a psychiatrist and a medical doctor, his 1981 statement was not sufficient to demonstrate that the diagnosis in 1952 of a schizoid personality was incorrect.

On June 28, 1981, plaintiff requested reconsideration by the DOTBCMR, and submitted additional non-medical evidence to support his claim for relief. Plaintiff asserted he was unable financially to obtain medical evidence. The DOTBCMR referred plaintiff's records to the Chief, Office of Health Services, Coast Guard. On November 30, 1981, the Chief, Operational Medical Division, responded that there was sufficient evidence in the record to support the original diagnosis, that a current psychological examination was not likely to be of value, and that there was no information in the records which would support a conclusion that plaintiff suffered from a ratable disability at the time of discharge. Plaintiff did not provide any medical evidence in rebuttal. The DOTBCMR on April 22, 1982, denied the petition for reconsideration.

In November 1982, plaintiff petitioned the DOTBCMR for reconsideration and submitted medical evidence that included the results of a psychiatric examination by Dr. A.B. Hardy, M.D. Dr. Hardy's conclusions, in a letter dated November 9, 1982, indicated his belief that plaintiff had been suffering from agoraphobia since 1952, that plaintiff's condition had

worsened until it now severely impeded plaintiff's ability to function normally. Dr. Hardy indicated that plaintiff exhibited schizoid tendencies.

In order to clarify Dr. Hardy's conclusions, the DOTBCMR, on December 28, 1982, wrote to Dr. Hardy. The board told Dr. Hardy it was concerned with plaintiff's alleged disability when discharged in 1952, and asked for his advice as to the percentage of disability plaintiff might have been suffering at that time. Dr. Hardy, on January 12, 1983, replied that all he could say presently was that plaintiff "is totally disabled" by the effects of agoraphobia. Because he did not know plaintiff in 1952, Dr. Hardy did not offer an opinion as to whether plaintiff was incapacitated at that time. DOTBCMR in a decision on reconsideration, dated April 21, 1983, stated that plaintiff's evidence, including the statements of Dr. Hardy, did not constitute persuasive evidence from an appropriate medical authority that at the time of plaintiff's discharge in 1952 he suffered from a ratable disability.

In June 1984 plaintiff again sought reconsideration by the DOTBCMR. Plaintiff submitted new evidence. This included a skull X-ray and report from the Veterans Administration dated October 29, 1952, which he contended corroborated the allegation of a service incurred head injury. Plaintiff also submitted a new psychiatric report, prepared in August 1983, and an August 1983 Veterans Administration consultation sheet. Both reports indicate that plaintiff in 1983 suffered from phobias, and that plaintiff also, in 1983, suffered from a schizoid personality disorder. Neither report established when these mental conditions began, or any connection with plaintiff's military service to these mental conditions. On May 19, 1985, the DOTBCMR after consideration of this new evidence, found it insufficient to overcome the 1952 diagnosis and denied the request for reconsideration.

On September 4, 1984, plaintiff filed suit in the United States District Court for the Northern District of California, No. C–84–20566–RPA. This suit claimed damages for what was alleged to be the wrongful and negligent conduct of the Public Health Service in failing to disclose to plaintiff that at the time of his discharge he suffered from a phobic neurosis, instead of a schizoid personality disorder. In an order filed March 5, 1985, on motion of the United States, the District Court ordered the case be dismissed for failure to state a claim on which relief can be granted. The court concluded that any claims which plaintiff might properly assert that arise from negligent or intentional misconduct in processing his discharge were barred by the *Feres* doctrine. *Feres v. United States*, 340 U.S. 135 [71 S.Ct. 153, 95 L.Ed. 152] (1950). Plaintiff requested reconsideration. On June 28, 1985, the court found that plaintiff could not state a claim based on deprivation of a constitutional right, that plaintiff's causes of action sound in tort and are barred by the *Feres* doctrine, and dismissed the complaint. That dismissal was not appealed.

On August 27, 1985, plaintiff filed his complaint in this case. Plaintiff seeks retroactive disability retirement, and claims damages in excess of $1,100,000 for himself and his children.

In the present suit, plaintiff again seeks disability retirement pay stemming from his discharge from the U.S. Coast Guard in 1952. In addition, plaintiff seeks to add the U.S. Coast Guard as a third-party defendant.

In support of his renewed claim, plaintiff states that on October 14, 1987, he mailed a written "Demand for Physical Evaluation Board" (PEB) to Admiral Paul A. Yost, Jr., Commandant, United States Coast Guard. On November 3, 1987, plaintiff received a reply to his October 14 letter from M.D. Gentile, Assistant Chief, General Law Division, U.S. Coast Guard. The Coast Guard denied plaintiff's demand for a PEB stating:

> The Coast Guard Physical Evaluation Board makes determinations on active duty personnel and members on the Tem-

porary Disability Retired List. You are not in either category. Accordingly, the Physical Evaluation Board has no authority to make a determination in your case. The Veterans' Administration would be the proper forum. However, our records show that the Veterans' Administration has already denied your claim for compensation for a service connected disability.

Plaintiff argues that for the "first time in over 35 years this claim finally ripened for judicial judgment when administrative officer Gentile refused my demand for a lawful Physical Evaluation Board where I could make a full and fair claim for relief." Plaintiff also argues that the "Waiver of Rights to a Full and Fair Hearing"[1] which he signed on May 16, 1952, applied only to that specific date and did not preclude him from demanding a hearing before a PEB at a later date.

### Discussion

Despite plaintiff's assertion that his claim is finally ripe for judicial review, his complaint must be dismissed with prejudice under the legal doctrine of *res judicata*. *Res judicata* or claim preclusion provides that "a final decision on the merits of a claim bars a subsequent action between the same parties or their privies on that claim or any part thereof." *Brown v. United States*, 3 Cl.Ct. 31, 41 (1983). This rule prevents a party from subsequently litigating the same claim arising out of the same transactional facts yet based on a different cause of action. In addition, *res judicata* applies not only to the causes of action initially litigated but also to causes of action "which were not but should have been raised in the prior litigation." *Id. See*

also *Container Transport International, Inc. v. United States*, 199 Ct.Cl. 713, 717, 468 F.2d 926, 928 (1972).

In determining whether the principles of *res judicata* apply, the Court must examine three factors: (1) whether the parties are legally identical; (2) whether the transactions or events underlying the claims are substantially related; and, (3) whether the non-moving party had a "full and fair opportunity to litigate" the claim. *J.C. Bass v. United States*, 11 Cl.Ct. 295, 299–300 (1986).

In the present case, the parties are identical to those in the first proceeding. Although plaintiff seeks to add the U.S. Coast Guard as a defendant, it is well established that a suit against a department or agency of the government also constitutes a suit against the United States. *Bass*, 11 Cl.Ct. at 299; *Larsen v. United States*, 145 Ct.Cl. 178, 180, 170 F.Supp. 806, 807 (1959).

Second, the facts underlying plaintiff's complaint are, with a few insignificant additions, the exact facts which plaintiff relied upon in his prior suit. The only new fact which plaintiff propounds is his demand from the Coast Guard of a Physical Evaluation Board and the Coast Guard's denial of a PEB.

Finally, it is clear that plaintiff had a "full and fair opportunity to litigate" his prior claim. In his memorandum of decision filed March 6, 1986, dismissing plaintiff's complaint, Judge Harkins listed the contents of the record before the Court. This included plaintiff's dispositive motion, proposed findings of uncontroverted fact, response, reply to defendant's response to

1. The "Waiver of Rights to a Full and Fair Hearing" dated 16 May 1952 and signed by plaintiff stated in part:
I hereby certify that it has been fully explained to me that the Board of Medical Survey before which I appeared has found that I am suffering from a personality defect (physical disability), namely Schizoid personality, 000–x42, and that this defect (disability) existed prior to my initial or current entry into the U.S. Coast Guard on 10 December, 1951, and was neither incurred in, nor aggravated by, a period of Military Service.

* * * * * *
I further certify that it has been fully explained to me that if I sign this waiver I shall be separated from the U.S. Coast Guard in the near future without further hearing and without disability retirement pay or severance pay and without any compensation whatsoever; * * *.
With full knowledge of the findings of the Board of Medical Survey convened in my case and with full knowledge of my rights in this matter I hereby waive my right to a hearing by a Physical Evaluation Board * * *.

plaintiff's motion for summary judgment and motion for supplemental pleadings. Accordingly, it is clear that plaintiff had ample opportunity to present his claim to the Court.

The doctrine of *res judicata* precludes "parties from contesting matters that they have had a full and fair opportunity to litigate, protects their adversaries from the expense and vexation of attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979). In the instant case, relitigation of plaintiff's claim would undermine all of the above listed principles of *res judicata.*

Plaintiff's earlier cause of action was not only considered in the United States Claims Court but was appealed to the United States Court of Appeals for the Federal Circuit. *See Reidt v. United States,* No. 490–85C (Cl.Ct. March 6, 1986), *appeal dismissed,* No. 86–1016 (Fed.Cir. April 18, 1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 125, 98 L.Ed.2d 83 (1987).

As Judge Harkins noted in his memorandum of decision, there may well be legal grounds which preclude plaintiff's claim other than the statute of limitations [2] or *res judicata* in the instant case. However, those issues need not be addressed since the doctrine of *res judicata* is dispositive.

### Conclusion

For the above listed reasons, the complaint shall be dismissed by the Clerk. No costs.

---

2. For a discussion of the applicability of the doctrine of *res judicata* to a prior judgment based on a statute of limitations *see* 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice ¶ 0.409[6] (1984).